# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| S.C., | ) |
|     Plaintiff, | ) ) ) |
| vs. | ) ) |
| DIRTY WORLD, LLC, a Delaware limited liability company, | ) )   Case No: 4:11-cv-392 ) |
| and | ) ) |
| NIK RICHIE, an individual, | ) ) |
|     Defendants. | ) |

### SUGGESTIONS IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

ARMSTRONG TEASDALE LLP

BY:/s/ *Darren K. Sharp*_____
   Darren K. Sharp       MO #50841
   2345 Grand Boulevard, Suite 2000
   Kansas City, Missouri 64108
   816.221.3420
   816.221.0786 (facsimile)
   dsharp@armstrongteasdale.com

AND

   GINGRAS LAW OFFICE, PLLC
   David S. Gingras (admitted *pro hac vice*)
   3941 E. Chandler Blvd., #106-243
   Phoenix, AZ 85048
   Tel.: (480) 668-3623
   Fax: (480) 248-3196
   DAVID@GINGRASLAW.COM

**ATTORNEY FOR DEFENDANTS**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii

I. INTRODUCTION ............................................................................................. 1

II. ARGUMENT ..................................................................................................... 1

      A.       Under Missouri's "Fair Report Privilege", Discussion Of A Pending Court Case Or Court Decision Is Protected As A Matter Of Law. ........................................................................................................ 3

      B.       The First Amendment Protects Mr. Richie's Expressions Of Opinion. ................................................................................................. 7

      C.       Plaintiff Has Failed To State A Viable Claim For Public Disclosure Of Private Facts ................................................................................... 9

      D.       Additional Remarks. ......................................................................... 10

III. CONCLUSION ................................................................................................ 12

CERTIFICATE OF SERVICE ................................................................................. 14

# TABLE OF AUTHORITIES

**Cases**

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................ 1

*Charles Brooks Co. v. Ga.-Pac., L.L.C.*, 552 F.3d 718 (8th Cir. 2009) ........................................ 2

*Childs v. Williams*, 825 S.W.2d 4 (Mo.App. 1992) ..................................................................... 9

*Collins v. Purdue Univ.*, 703 F.Supp.2d 862 (N.D.Ind. 2010) ........................................ 10, 11, 12

*Diener v. Star-Chronicle Publishing Co.*, 135 S.W. 6 (Mo. 1911) ................................................ 9

*DiMeo v. Max*, 248 Fed.Appx. 280 (3rd Cir. 2007) ..................................................................... 12

*Dubinsky v. Mermart, LLC*, 595 F.3d 812 (8th Cir. 2010) ............................................................ 2

*Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d
   1157 (9th Cir. 2008) .................................................................................................................. 6

*FCC v. Pacifica Foundation*, 438 U.S. 726 (1978) ...................................................................... 7

*Hoeflicker v. Higginsville Advance, Inc.*, 818 S.W.2d 650 (Mo.App. 1991) ............................. 5, 6

*Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston, Inc.*, 515
   U.S. 557 (1995) ........................................................................................................................ 7

*Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46 (1988) ................................................................ 8

*Kenney v. Scripps-Howard Broadcasting Co.*, 259 F.3d 922 (8th Cir. 2001) ................................ 4

*Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990) ................................................................... 8

*NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982) .......................................................... 8

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250 (4th Cir. 2009) .................... 12

*New York Times Co. v. Sullivan*, 376 U.S. 254 (1964) ................................................................. 8

*Rinsley v. Brandt*, 700 F.2d 1304 (10th Cir. 1983) ...................................................................... 8

*Shafer v. Lamar Publishing Co.*, 621 S.W.2d 709 (Mo.App.1981) ........................................ 4, 5

*Snyder v. Phelps*, 580 F.3d 206 (4th Cir. 2009) ............................................................................. 8

*Spradlin's Market, Inc. v. Springfield Newspapers, Inc.*, 398 S.W.2d 859 (Mo.
   1966) ......................................................................................................................................... 5

*Texas v. Johnson*, 491 U.S. 397 (1989) ......................................................................................... 7

*Williams v. Pulitzer Broadcasting Co.*, 706 S.W.2d 508 (Mo.App. 1986) .................................... 5

*Y.G. v. Jewish Hosp. of St. Louis*, 795 S.W.2d 488 (Mo.App. 1990) ............................................ 9

**Other Authorities**

*Fair Comment, The "Brightest Jewel In The Crown Of Law," As Protection For
   Free Speech And Against Abusive SLAPP Suits*, 61 J. Mo. B. 132, 139 (2005) ..................... 6, 9

*Federal Practice and Procedure* § 1216, pp. 233–34 (3d ed.2004) ................................................ 1

*Reporting Behind A Shield: The Growth Of Missouri's Fair Report Privilege To
   Defame*, 68 Mo. L. Rev. 215, 226–27 (2003) ........................................................................... 5

Restatement (Second) of Torts § 587 (1977) ................................................................................... 4

Restatement (Second) of Torts § 611 cmt. d (1976) .................................................................... 5, 6

Restatement (Second) of Torts § 652C cmt. d (1977) ................................................................... 10

Restatement (Second) of Torts § 652D ........................................................................................... 9

**Rules**

Fed. R. Civ. P. 12(b)(6) ................................................................................................................... 1

Defendants, by and through counsel, and in support of their Motion to Dismiss, state as follows:

## I.     INTRODUCTION

This motion turns on a simple threshold question of law—if one party to a pending lawsuit (here, Defendant Nik Richie) makes a public comment about any publicly-available aspect of the case, such as posting a statement informing the public about a ruling from the Court on an important issue, could that conduct permit the opposing party (here, Plaintiff) to bring <u>new</u> claims for intentional infliction of emotional distress and/or public disclosure of private facts? As explained herein and as a matter of law, the answer is clearly *no*; under both the First Amendment and as a matter of well-settled Missouri law, Mr. Richie's conduct is entirely lawful and cannot support either of the new claims presented in Plaintiff's First Amendment Complaint. As such, even assuming Plaintiff's allegations are true, her fifth and sixth causes of action fail to state a claim upon which relief may be granted and those claims should therefore be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

Each of these points is explained fully herein.

## II.     ARGUMENT

As the Court is aware, the standards for a Rule 12(b)(6) motion are well-established; "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should ... be exposed at the point of minimum expenditure of time and money by the parties and the court." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007) (internal quotations omitted) (quoting 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 233–34) (3d ed.2004)). In determining whether to dismiss a claim, the Court "must take all facts alleged in the complaint as true, but 'threadbare' assertions of a cause

of action are insufficient." *Dubinsky v. Mermart, LLC*, 595 F.3d 812 (8th Cir. 2010) (citing *Charles Brooks Co. v. Ga.-Pac., L.L.C.*, 552 F.3d 718, 721 (8th Cir. 2009)).

Here, the two new claims presented in Plaintiff's First Amended Complaint are each based primarily on the factual allegations in Paragraph 25 of that pleading which state:

> On or about June 6, 2011, Defendant Richie published a post on his website entitled "(S.C.) v. Dirty World: Another legal victory for the Dirty Army." Within the post Defendant Richie posted this Court's Order denying Plaintiff's motion to seal her case, a link to other court documents and stated: "So this girl named (S.C.) is suing me after I gladly removed her post. (S.C.) is from Missouri and she is a girl of God. In my opinion, (S.C.) is trying to hide the fact that she is trying to sue me from the public because she doesn't want her church to know. Well, the judge denied her request to seal the case. If you know this (S.C.) girl please fill me in because now it is game on." (Plaintiff's real name omitted). Following the post, readers of the website provided comments regarding both the Plaintiff and the situation regarding the defamatory content posted about her.

Restated in plain English, Plaintiff's allegations can be boiled down to this—after the Court denied Plaintiff's Motion to Seal, Mr. Richie posted a copy of the Court's order (Doc. #16), and he made some general comments about the case including a reference to the fact that Plaintiff "is trying to hide the fact that she is trying to sue me from the public because she doesn't want her church to know." This comment generally invited readers to contact Mr. Richie with any relevant information about Plaintiff, which allegedly resulted in users posting some "comments regarding both the Plaintiff and the situation … ."

Importantly, Plaintiff <u>does not</u> allege that any of Mr. Richie's comments were false or inaccurate, nor does Plaintiff allege that Mr. Richie's comments misrepresented either the Court's ruling or the positions taken by Plaintiff in this case. Furthermore, Plaintiff does not allege that any of the additional user-generated comments posted following Mr. Richie's remarks were false, defamatory, or unlawful. Rather, Plaintiff simply claims that by merely *mentioning* the Court's ruling and the fact of this lawsuit, Mr. Richie engaged in unlawful conduct.

2

Based on these allegations, Plaintiff presents two new claims. The first new claim (Plaintiff's fifth cause of action) is for "intentional infliction of emotional distress". This claim alleges that by engaging in a public discussion of the Court's ruling and about the case in general, "Defendant Richie's conduct and statements made on his website regarding Plaintiff on June 6, 2011 was extreme and outrageous in that it went beyond all the possible bounds of decency and is utterly intolerable in a civilized community." FAC ¶ 50.

Plaintiff's other new claim is her sixth cause of action for "public disclosure of private facts". However, in her specific allegations relating to this claim, Plaintiff does <u>not</u> allege that Mr. Richie disclosed any "private facts" about her. Rather, the claim generally asserts that "The public has no legitimate concern with any aspect of Plaintiff's personal life, outside of what may be included in open court pleadings." FAC ¶ 56. Despite this, Plaintiff does *not* allege that Mr. Richie discussed any aspect of Plaintiff's personal life aside from whatever facts were already contained in the Court's order and other pleadings in this matter.

Assuming that all of these facts are true, Plaintiff has failed to state a viable claim upon which relief may be granted because: 1.) pursuant to Missouri's fair comment/report privilege the fair and accurate reference to the contents of public proceedings is privileged and this privilege bars both of Plaintiff's new claims; and 2.) as a matter of First Amendment law, Mr. Richie's expression of opinions about the Plaintiff are fully protected and cannot support either of Plaintiff's new claims. Both of these claims should therefore be dismissed.

### A.  Under Missouri's "Fair Report Privilege", Discussion Of A Pending Court Case Or Court Decision Is Protected As A Matter Of Law.

It is obvious that the two new claims in Plaintiff's First Amended Complaint are primarily based on the fact that Mr. Richie posted a copy of this Court's order denying Plaintiff's Motion to Seal and he made some brief additional comments about the case and the positions

3

Plaintiff presented with respect to her Motion to Seal. Again, Plaintiff does not allege that any part of Mr. Richie's comment was false or inaccurate, nor does she allege that Mr. Richie repeated any defamatory statements about her. Instead, she simply seeks to punish Mr. Richie for his act of *talking about this case*.

On its face, this is not a valid claim for multiple reasons. Initially, it should be noted that parties to any judicial proceeding generally enjoy an *absolute* privilege to publish defamatory matter in litigation concerning another as long as the statement "has some relation to the proceeding". RESTATEMENT (SECOND) OF TORTS § 587 (1977). Of course, Plaintiff has *not* asserted that anything contained in Mr. Richie's June 6, 2011 comment was defamatory, so the application of this privilege is likely unnecessary, but it underscores an important point—claims arising from statements made during the course of litigation are so strongly disfavored that even if Mr. Richie were to deliberately defame Plaintiff in pleadings filed in this matter (which he has not done), this conduct would be absolutely privileged and would permit no liability at all.

Even assuming the litigation privilege does not apply (which is not necessary to the disposition of this motion and is not a point Defendants raise here), to the extent that Plaintiff is seeking to impose liability for Mr. Richie's decision to make a public comment about the case, this conduct is subject to a similar qualified privilege which clearly <u>does</u> apply here:

> Reports of legislative, judicial or executive proceedings and the statements made therein, are subject to a qualified privilege. The fair report privilege, adopted by the Missouri Court of Appeals in *Shafer v. Lamar Publishing Co.*, 621 S.W.2d 709, 711 (Mo.App.1981), is set out in Restatement (Second) of Torts § 611 (1976): "The publication of defamatory matter concerning another in a report of an official action or proceeding or of a meeting open to the public that deals with a matter of public concern <u>is privileged if the report is accurate and complete or a fair abridgment of the occurrences reported</u>." The question of the existence of a qualified privilege is a question of law for the court and is particularly appropriate for resolution on a motion for summary judgment.

*Kenney v. Scripps-Howard Broadcasting Co.*, 259 F.3d 922, 923–24 (8th Cir. 2001) (emphasis

4

added) (applying Missouri law and citing *Spradlin's Market, Inc. v. Springfield Newspapers, Inc.*, 398 S.W.2d 859, 864 (Mo. 1966)). As explained in a lengthy Missouri Law Review article concerning this privilege:

> <u>The fair report privilege is based on the "interest of the public in having information made available to it as to what occurs in official proceedings and public meetings</u>." The basic idea is that providing the privilege will spur "freedom of discussion" and, at the same time, encourage the government to "be responsive to the will of the people" by making its official actions more readily known to the public. Also, because the privilege is limited to official proceedings or meetings open to the public, <u>a report of such merely makes members of the public aware of information they would have known had they attended the meeting or had they taken any other action to know information they already had a right to know</u>.

Steve J. Jasper, *Reporting Behind A Shield: The Growth Of Missouri's Fair Report Privilege To Defame*, 68 Mo. L. Rev. 215, 226–27 (2003) (emphasis added) (explaining, "For the purposes of the privilege, an 'official act or proceeding' includes 'any action taken by any officer or agency of the government of the United States, or of any State or of any of its subdivisions.'.") (quoting *Shafer*, 621 S.W.2d at 712 (quoting RESTATEMENT (SECOND) OF TORTS § 611 cmt. d (1976)). As further explained in the comments to the Restatement, "<u>The privilege is thus applicable to the report of proceedings before any court</u> …" and the privilege is <u>not</u> afforded exclusively to newspapers or traditional media sources, rather "<u>It extends to any person who makes an oral, written or printed report to pass on the information that is available to the general public</u>." RESTATEMENT (SECOND) OF TORTS § 611 cmts. c & d (1976) (emphasis added).

Whether the privilege applies in any given case "is a question of law [for the Court] and is not to be submitted to the jury." *Hoeflicker v. Higginsville Advance, Inc.*, 818 S.W.2d 650, 652 (Mo.App. 1991) (citing *Williams v. Pulitzer Broadcasting Co.*, 706 S.W.2d 508, 511 (Mo.App. 1986)). Of course, this privilege may be lost if the defendant's statements are not a fair and substantially accurate explanation of the matter being discussed. *See Hoeflicker*, 818

5

S.W.2d at 652 (explaining, "[i]t is not necessary that it be exact in every immaterial detail or that it conform to that precision demanded in technical or scientific reporting. It is enough that it conveys to the persons who read it a substantially correct account of the proceedings.")

Here, the fair report privilege[1] applies to Mr. Richie's statements about this case and in particular to his comments about the Court's denial of Plaintiff's Motion to Seal. As alleged in Paragraph 25 of the First Amended Complaint, Mr. Richie posted a complete and unaltered copy of the Court's order (which, of course, is freely available to any interested member of the public via PACER). In addition, Mr. Richie offered the following comment with respect to Plaintiff's motives for attempting to seal the case, "In my opinion, [Plaintiff] is trying to hide the fact that she is trying to sue me from the public because she doesn't want her church to know." This statement is an entirely fair and accurate paraphrasing of the primary reason advanced by Plaintiff in her Motion to Seal which the Court itself recognized; "The Plaintiff argues in part that her name and related information should be sealed because she works for a religious organization." Doc. 16 at 2.

---

[1] Some very old authority suggests the fair report privilege might require a showing that the defendant acted with a "proper purpose and motive". *See* Mark S. Sableman, *Fair Comment, The "Brightest Jewel In The Crown Of Law," As Protection For Free Speech And Against Abusive SLAPP Suits*, 61 J. Mo. B. 132, 139 (2005) (citing cases). Whether this rule remains good law is doubtful. *See id*. at 140 (arguing, "a motive-based defeasance test is no longer necessary … the sole legal test for fair comment should be whether the occasion and expression qualify for the privilege.") (citing RESTATEMENT (SECOND) OF TORTS § 611). However, in this case, Mr. Richie's motives were plainly proper – as a small business with extremely limited resources, every new lawsuit imposes a severe financial burden on the site; a burden from which the CDA was intended to provide complete relief. *See Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1175 (9th Cir. 2008) (explaining that the CDA "must be interpreted to protect websites not merely from ultimate liability, but from having to fight costly and protracted legal battles.") By posting a copy of the court's order and generally discussing the case, Mr. Richie hoped to inform viewers that lawsuits against the site would be vigorously defended and that suits such as this one (where the plaintiff sued even though the disputed content had already been removed) were particularly ill-advised. Both of these purposes were entirely legitimate and proper reasons for Mr. Richie's actions.

In sum, nowhere in her Amended Complaint does Plaintiff allege that Mr. Richie's comments were inaccurate, nor does she claim that they were not a fair explanation of the case or of the substance of this Court's ruling. More importantly, by posting the Court's order, Mr. Richie did nothing more than to provide the public with access to information about the Court's decision which, of course, the public had an absolute right to access anyway. For these reasons, the fair report privilege applies and it bars Plaintiff's fifth and sixth causes of action.

### B. The First Amendment Protects Mr. Richie's Expressions Of Opinion.

Entirely separate and apart from the question of privilege is an alternative basis for the Court to dismiss both new claims in the First Amended Complaint—Mr. Richie's short expression of opinions[2] about Plaintiff are protected by the First Amendment, even if they were offensive, annoying, or even hurtful to Plaintiff; "If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." *Texas v. Johnson*, 491 U.S. 397, 414 (1989). This principle is not subject to arbitrary application based on matters of taste, nor does the First Amendment's protection depend on whether a statement is benevolent or offensive; "the point of all speech protection ... is to shield just those choices of content that in someone's eyes are misguided, or even hurtful." *Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston, Inc.*, 515 U.S. 557, 574 (1995).

On the contrary, "[T]he fact that society may find speech offensive is not a sufficient reason for suppressing it. Indeed, if it is the speaker's opinion that gives offense, that consequence is a reason for according it constitutional protection." *FCC v. Pacifica Foundation*, 438 U.S. 726, 745 (1978); *see also NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 910

---

[2] Again, the First Amended Complaint does not allege that any of the statements in Mr. Richie's June 6, 2011 post were false, nor does Plaintiff allege that any of Mr. Richie's statements were defamatory. As such, Defendants presume that Plaintiff's focus is primarily on Mr. Richie's expression of his opinions as to Plaintiff's motives in seeking to seal the record of this matter.

7

(1982) ("Speech does not lose its protected character ... simply because it may embarrass others or coerce them into action"). Based on these principles, courts have consistently held that claims which seek to punish a defendant for expressing an opinion raise serious First Amendment concerns:

> It is well established that tort liability under state law, even in the context of litigation between private parties, is circumscribed by the First Amendment … . Thus, <u>regardless of the specific tort being employed, the First Amendment applies when a plaintiff seeks damages for reputational, mental, or emotional injury allegedly resulting from the defendant's speech</u>.

*Snyder v. Phelps*, 580 F.3d 206, 217–18 (4th Cir. 2009) (emphasis added), *aff'd*, 131 S.Ct. 1207 (2011) (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 264-65, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 53 (1988)). In this context, no matter how offensive they may be, expressions of opinion are simply *per se* non-actionable; "although there is no categorical constitutional defense for statements of 'opinion,' <u>the First Amendment will fully protect 'statements that cannot 'reasonably [be] interpreted as stating actual facts' about an individual</u>." *Snyder*, 580 F.3d at 218 (quoting *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 22 (1990)); *see also Rinsley v. Brandt*, 700 F.2d 1304, 1307 (10th Cir. 1983) (explaining, "the defense available in a defamation action that the allegedly defamatory statements are opinions, not assertions of fact, is also available in a false light privacy action.")

Applying these standards to this case, it is evident that Plaintiff is constitutionally prohibited from attempting to muzzle Mr. Richie's statements of opinion such as: "In my opinion, [Plaintiff] is trying to hide the fact that she is trying to sue me from the public because she doesn't want her church to know." Putting aside the fact that this statement is nothing more than a true and accurate explanation of a position that Plaintiff *has in fact* taken in this case, this type of non-literal commentary is at the core of the First Amendment's protection. Regardless of

whether this statement was hurtful, upsetting, distressing or annoying to Plaintiff, the First Amendment does not permit Plaintiff to stifle this type of criticism merely because of its offensive nature; "a writer may use a hammer, instead of a feather, in fulminating argumentatively." Mark S. Sableman, *Fair Comment, The "Brightest Jewel In The Crown Of Law," As Protection For Free Speech And Against Abusive SLAPP Suits*, 61 J. Mo. B. 132, 133 (2005) (quoting *Diener v. Star-Chronicle Publishing Co.*, 135 S.W. 6, 9 (Mo. 1911)).

### C. Plaintiff Has Failed To State A Viable Claim For Public Disclosure Of Private Facts.

Finally, Plaintiff's sixth cause of action for public disclosure of private facts plainly fails to state a claim upon which relief may be granted because Plaintiff's allegations, even if true, do not establish the required elements of this tort. Specifically, Missouri law defines the tort of public disclosure of private facts as "(1) publication or publicity, (2) absent any waiver or privilege, (3) of private matters in which the public has no legitimate concern, (4) so as to bring shame or humiliation to a person of ordinary sensibilities." *Childs v. Williams*, 825 S.W.2d 4, 7 (Mo.App. 1992) (quoting *Y.G. v. Jewish Hosp. of St. Louis*, 795 S.W.2d 488 (Mo.App. 1990) (citing RESTATEMENT (SECOND) OF TORTS § 652D)). In addition, the tort applies only to the non-privileged disclosure of <u>true private facts</u> about the Plaintiff. *See* RESTATEMENT (SECOND) OF TORTS § 652D. Here, it is apparent that these elements are not established by the allegations in the First Amended Complaint.

As noted above, to the extent that Mr. Richie merely posted copies of publicly available pleadings such as the Court's order denying Plaintiff's Motion to Seal, such publication did not involve any private facts, it was privileged, and it did not concern a private matter in which the public has no valid concern. Rather, Mr. Richie's statements described a public action by a government entity (this Court) which involved a ruling on an important issue of public concern;

9

*e.g.*, the extent to which the public has a fundamental right to access judicial records. To suggest that court rulings of this nature are not "matters in which the public has a legitimate concern" is to ignore reality. This is particularly true given that this case has, not surprisingly, received attention from groups no less legitimate than the *Citizen Media Law Project* operated by Harvard Law School. *See* http://www.citmedialaw.org/threats/sc-v-thedirty (including editorial summary and discussion of this action and links to various court documents).

Just as Plaintiff could not successfully sue Harvard University for engaging in or promoting public discussion and commentary about this case, she likewise cannot sue Mr. Richie for engaging in exactly the same[3] constitutionally protected conduct.

### D. Additional Remarks.

Although the points discussed above are dispositive of Plaintiff's fifth and sixth causes of action, two short additional comments are warranted. First, to the extent that Plaintiff has alleged that Mr. Richie engaged in "extreme and outrageous" conduct by suggesting that third parties should submit comments about this case or about Plaintiff specifically, this theory fails as a matter of law for the reasons explained in *Collins v. Purdue Univ.*, 703 F.Supp.2d 862 (N.D.Ind. 2010). In *Collins*, the plaintiff sued the publisher of a university newspaper for, among other things, intentional infliction of emotional distress based on the publication of a

---

[3] The case discussion page on the *Citizen Media Law Project* website does not identify Plaintiff's real name, so in that respect, Mr. Richie's conduct was not strictly identical to that of Harvard. However, merely identifying Plaintiff by name is not a tort. *See* RESTATEMENT (SECOND) OF TORTS § 652C cmt. d (1977) (explaining, "No one has the right to object merely because his name or his appearance is brought before the public, since neither is in any way a private matter and both are open to public observation.") Moreover, as noted in the Court's order denying her Motion to Seal, Plaintiff's true name is not a "private fact". Rather, that information was already publicly available on Defendant's website from January 24, 2011 through April 14, 2011, and her name is also publicly accessible in other pleadings filed in this case such as Exhibit J (Doc. #14-11) to the affidavit of Nik Richie submitted in support of Defendants' Motion for Summary Judgment.

story which loosely implied that the plaintiff was suspected of involvement in the disappearance of a fellow student. *See Collins*, 703 F.Supp.2d at 867–68. In addition, the plaintiff alleged that the university engaged in "extreme and outrageous" conduct by publishing the story on its website and "inviting" readers to post comments about it, which resulted in third partiers posting a large number of "vitriolic and hateful" statements about the plaintiff. *See id*. at 868.

In granting the university's motion for judgment on the pleadings, the District Court offered the following observation:

> Collins also argues that <u>inviting readers' comments about the article and publishing them on the website constituted the outrageous conduct element necessary for the claim of intentional infliction of emotional distress</u>. Regardless of any free speech protections and the fact that the scathing commentary was not written by Federated, publishing the article on the site and allowing readers' comments cannot be regarded as outrageous. Even if the readers' comments had been outrageous, Federated's actions in that regard were not outrageous and lack the requisite intent for a claim of intentional infliction of emotional distress.

*Collins*, 703 F.Supp.2d at 874 (emphasis added) (also explaining, "The court takes judicial notice that it is common practice for online articles to include the opportunity for public discussion in the form of postings such as here.")

Separate and apart from this issue, the District Court in *Collins* also held that even if the university somehow generally "encouraged" or "invited" readers to post comments about the plaintiff (an allegation Plaintiff makes here), this conduct would still <u>not</u> defeat the university's immunity under the Communications Decency Act:

> [Defendant] Federated can be held liable for defamatory statements in its own material published on the website–such as the article if the article was defamatory–but cannot be held liable for the publication of remarks or postings by third parties. Like the defendant in *DiMeo*, Federated did not create or develop the posted comments and cannot be held responsible for them. Also like *DiMeo*, <u>none of the facts before the court show any encouragement by Federated for readers to comment on the website articles in a defamatory way</u>. Moreover, Collins has made no assertions in either his First Amended Complaint or his response briefs suggesting that Federated engaged in any of the revisions or

> redrafting discussed in *Nemet* or applied any editorial function whatsoever over the comments posted by the readers on its website. Collins himself titles these counts in his First Amended Complaint as "reader comments," making them unattributable to Federated. Because Federated is immune from liability for the third-party content posted on its website by the CDA, Collins' claims charging Federated with liability for the third-party postings on its website fail.

*Collins*, 703 F.Supp.2d at 879 (emphasis added) (citing *DiMeo v. Max*, 248 Fed.Appx. 280 (3rd Cir. 2007) and *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.,* 591 F.3d 250 (4th Cir. 2009)).

Of course, the First Amended Complaint does not allege that any of the comments made after Mr. Richie's posting of the Court's order were false, defamatory, or unlawful. However, for the reasons explained in *Collins*, even if a third party did post such a comment, Defendants would still be entitled to immunity under the CDA as to that user-generated material.[4]

### III. CONCLUSION

If Plaintiff is offended by the *content* of Mr. Richie's opinions, her remedy is not to invoke the awesome power of this Court to obtain a judicial declaration that Mr. Richie is a bad person deserving of scorn. Similarly, Plaintiff has no right to use this Court as a publicly-funded

---

[4] In its Order (Doc. #26) granting Plaintiff's Motion for Leave to Amend, the Court expressed a concern that, "importantly, the Defendants have not argued that Richie's most recent comments are entitled to CDA immunity." This point is, in fact, irrelevant here. As explained above, Mr. Richie's comments were entirely lawful, so those comments cannot support liability. With respect to the remaining claims, the presence of Mr. Richie's comments has no effect upon his immunity under the CDA for other material provided by third parties. Websites and their editors can be <u>both</u> "information content providers" and also "interactive service providers" while retaining CDA immunity. In other words, websites do not lose CDA immunity merely because they create *some* content which appears on the site. As long as the site's operator did not create the *unlawful* content, it remains fully immune; "It is not inconsistent for eBay to be [both] an interactive service provider and also an information content provider; the categories are not mutually exclusive. The critical issue is whether eBay acted as an information content provider with respect to the information that appellants claim is false or misleading." *Gentry v. eBay, Inc.*, 99 Cal.App.4th 816, 833 note 11, 121 Cal.Rptr.2d 703, 717 n. 11 (Cal.App.4th 2002); *see also Carafano v. Metrosplash.com. Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003) (same).

weapon for exacting economic revenge against Mr. Richie for engaging in constitutionally protected speech. Indeed, Plaintiff's retaliatory actions in this regard almost certainly violate the public policy concerns embodied in Section 537.528, R.S.Mo.

If Plaintiff disagrees with Mr. Richie's views, her remedy is to invoke an even more powerful weapon than the Courts—her own First Amendment rights. In doing so, Plaintiff can compete with Mr. Richie in the "marketplace of ideas", just as others have already done. *See*, *e.g.*, www.NikRichieSucks.com.

For these reasons, the fifth and sixth causes of action in Plaintiff's First Amended Complaint fail to state a claim upon which relief may be granted. Accordingly, those claims should be dismissed with prejudice.

ARMSTRONG TEASDALE LLP

BY:/s/ Darren K. Sharp
    Darren K. Sharp    MO #50841
    2345 Grand Boulevard, Suite 2000
    Kansas City, Missouri 64108
    816.221.3420
    816.221.0786 (facsimile)
    dsharp@armstrongteasdale.com

AND

GINGRAS LAW OFFICE, PLLC
David S. Gingras (admitted *pro hac vice*)
3941 E. Chandler Blvd., #106-243
Phoenix, AZ 85048
Tel.: (480) 668-3623
Fax: (480) 248-3196
DAVID@GINGRASLAW.COM

**ATTORNEY FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served via the Court's ECF system and via Regular U.S. Mail this 9th day of August, 2011 to:

Matthew J. O'Connor, Esq.
Bradly H. Bergman, Esq.
Mid-America Trial Lawyers
523 Grand Blvd., Suite 1B
Kansas City, Missouri 64106
mjoc@workingforjustice.com
bhb@workingforjustice.com

**Attorneys for Plaintiff**

*s/ Darren K. Sharp*
Attorney for Defendants