**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | | |
|---|---|---|
| S.C., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:11-cv-392 |
| | ) | |
| DIRTY WORLD, LLC, a Delaware limited | ) | |
| liability company, | ) | |
| | ) | |
| And | ) | |
| | ) | |
| NIK RICHIE, an individual | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFF'S SUGGESTIONS IN OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS FOR FAILURE TO STATE A CLAIM**

  Plaintiff, by and through counsel, and in opposition to Defendant's Motion to Dismiss for

Failure to State a Claim, states as follows:

**I.   Introduction**

  Plaintiff's Suggestions in Opposition follows Defendants' Motion to Dismiss for Failure to

State a Claim.  Defendants' motion seeks to dismiss counts V and VI from Plaintiff's First

Amended Complaint, claims of Intentional Infliction of Emotional Distress and Public

Disclosure of Private Facts, respectively.  Defendants argue dismissal is appropriate for several

reasons, including privilege, protection under the First Amendment, and that Defendants'

conduct was not extreme and outrageous as a matter of law.  Unfortunately, it appears that

Defendants have misinterpreted what conduct gives rise to Plaintiff's Intentional Infliction of

Emotional Distress claim, and therefore much of their argument is not applicable.  Plaintiff does,

Case 4:11-cv-00392-DW   Document 32   Filed 08/26/11   Page 1 of 11

however, concede to dismissal of count VI of her First Amended Complaint. As such, the only issue in Defendants' Motion to Dismiss the Court should concern itself is whether Plaintiff has successful pled a viable claim for Intentional Infliction of Emotional Distress.

## II. Argument

Federal Rule of Civil Procedure 12(b)(6) allows a complaint to be dismissed if it "fails to state a claim upon which relief can be granted." In reviewing a motion to dismiss the court accepts "the facts alleged in the complaint as true and granting all reasonable inferences in favor of the nonmoving party. In addressing a motion to dismiss, the court may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." *Mulvenon v. Greenwood*, No. 10-1957 (8th Cir., 2011).

### A. Defendants' Conduct is Not Covered either by any Legally Recognized Privilege or by the First Amendment.

Defendants' seem to have misinterpreted the conduct which gives rise to Plaintiff's sixth cause of action for Intentional Infliction of Emotional Distress. Plaintiff is not asserting that the actual act of posting the Order denying her Motion to Seal on Defendants' website is actionable. Nor is she asserting that the opinion Defendant Richie gives regarding her motives for seeking to seal this case is actionable. Rather, the conduct complained of is that Defendant took the opportunity when reporting the Court's Order to go beyond talking about the case and nefariously ask his thousands of readers to provide him with information about Plaintiff's private life without regard to truth or accuracy because it is "game on." It is solely this conduct perpetrated by Defendants' on June 6, 2011 that gives rise to her cause of action.

However, despite the subsequent irrelevance of the arguments, I will briefly address the points raised in Defendants' Suggestions in Support of Defendants' Motion to Dismiss for

Failure to State a Claim regarding privilege and argument regarding First Amendment protection of Defendant Richie's speech. Defendants' first assert that "parties to any judicial proceeding generally enjoy an absolute privilege to publish defamatory matter in litigation concerning another as long as the statement 'has some relation to the proceeding.'" Doc. 30 at 4. Again, this argument, as acknowledged by Defendants, is completely irrelevant because Plaintiff has not asserted any defamatory speech in her sixth causes of action, and this privilege mainly extends to defamatory materials in pleadings or in actual testimony before a Court, not to "communications" to the public. *See generally Bushell v. Caterpillar, Inc*., 683 N.E.2d 1286 (Ill. App. 1997). As such, Defendants are correct and this privilege is unnecessary and irrelevant to whether Plaintiff has stated a viable claim.

The Missouri fair report privilege, espoused in *Shafer v. Lamar Publishing Co*., 621 S.W. 2d 709, 711 (Mo.App. 1981), similarly does not apply in this case. Plaintiff's complaint is not the posting of the Order, nor Defendant's characterization of her motive in seeking to seal the case. However, even if this Court were to determine the privilege applies, it certainly would not apply to Defendants' conduct. Plaintiff concedes that the privilege "extends to any person who makes an oral, written or printed report to pass on the information that is available to the general public." RESTATEMENT (SECOND) OF TORTS section 611 cmts. C & d (1976). However, as Defendants' also point out, conduct may not lie under this privilege if the statements are not a fair and substantially accurate explanation of the information. In fact, "the requirement in Missouri for the privilege to exist is that the report be accurate and complete." *See Hoeflicker v. Higginsville Advance, Inc.,* 818 S.W. 2d 650, 651 (Mo.App. 1986).

Here, Defendant Richie commented "In my opinion, (Plaintiff) is trying to hide the fact that she is trying to sue me from the public because she does not want her church to know." In no

way is that report an "accurate and complete" explanation of the Court Order denying her Motion to Seal. Plaintiff did not seek to hide the fact that she is <u>suing</u> Defendants, but rather was attempting to stifle the disgusting and defamatory content directed towards her that was the subject of the complaint. Only a portion of her reasoning in attempting to seal the pleadings from public view dealt with her working for a religious organization, and a large part of that argument was that in her position with the religious organization her good name was her most important asset. Her intent was moreso to protect her employment interests and prevent prospective clients and employers from viewing the defamatory content. It was not religiously motivated as Defendant seems to report. Further, Defendants even admits that the "report" by Defendant Richie is not "accurate and complete" as they argue the Court recognizes Plaintiff argues "<u>in part</u> that her name and related information should be sealed because she works for a religious organization." Doc. 30 at 6, quoting Doc. 16 at 2 (emphasis added). While the fair report privilege is irrelevant to the conduct complained of in Plaintiff's complaint, even if found to apply in this case, Defendant should not enjoy its protection as it was not a complete and accurate "report" of Plaintiff's motive.

Finally, Defendants argue that the First Amendment protects Richie's expression of opinions. Plaintiff agrees that if her cause of action was based on his statement that "In my opinion, (Plaintiff) is trying to hide the fact that she is trying to sue me from the public because she does not want her church to know," the First Amendment might indeed provide protection. However, it is not this expression of opinion that gives rise to the intentional infliction of emotional distress that Plaintiff suffered. Plaintiff does not seek to punish Defendants' for their expression of opinion, but rather their behavior and conduct in gathering information about Plaintiff's private life by dastardly means and for nefarious purposes. Defendant does not argue

that the First Amendment protects this conduct. The First Amendment does protect a limited amount of conduct, but that conduct must come in the form of expressive speech, such as burning a flag, or dancing nude, or at least have some specific meaning behind it. See generally, *Texas v. Johnson*, 491 U.S. 397 (1989). Here, Defendants' conduct has no semblance of any important message behind it or expression other than one of spite. Further, there is a compelling governmental interest in protecting the judicially recognized fundamental right to privacy of its citizens. See *Griswold v. Connecticut*, 381 U.S.479 (1965). Defendants' conduct and behavior is not protected by the First Amendment here.

**B. Plaintiff has Stated a Viable Claim for Intentional Infliction of Emotional Distress.**

The only question this Court should concern itself with based on Defendants' Motion to Dismiss is whether Plaintiff's claim for intentional infliction of emotional distress presents a viable claim. The Court only needs to look at the facts alleged in her Complaint and cause of action to determine that it should not dismiss this claim as a matter of law. In Missouri, to state a valid claim for intentional infliction of emotional distress four elements must be present: "(1) the defendant must act intentionally or recklessly, (2) his conduct must be extreme and outrageous, (3) the conduct must be the cause (4) of severe emotional distress." *Boes v. Deschu*, 768 S.W.2d 205, 207 (Mo.App. E.D. 1989). Here, Plaintiff's First Amended Complaint clearly has sufficiently pleaded all four elements of the tort.

Again, it should be noted that the conduct complained of in Count V of Plaintiff's First Amended Complaint is Richie's soliciting "from his readers information, without regard to truth or veracity of said information, regarding Plaintiff to be used for private spite because, in his words, "now it's game on." (First Amended Complaint at ¶ 50). This conduct was intentional

5

and Defendants' sole intent was to cause her extreme emotional distress.  To satisfy the intent element of this tort in Missouri, the conduct complained of must be intended only to cause extreme emotional distress to the victim.  *K.G. v. R.T.R.* 918 S.W. 2d 795, 799 (Mo. 1996).  There is no legitimate purpose for Richie to ask the thousands of readers who somehow find his site appealing to provide him with private information about Plaintiff, which they subsequently provided.  This is especially true given that this lawsuit originated out of false and embarrassing private facts and defamatory material regarding Plaintiff published on his site.  Defendants were well aware that it was that conduct that had caused Plaintiff physical harm and caused her to seek medical attention.  Defendants, as they assert, may well have had a legitimate motive for posting the court Order to show that such suits will be vigorously defended.  However, actively seeking his readers to publicly give him dirt on Plaintiff does not serve that motive.  Rather, Richie had plenty of motive to intentionally inflict emotional distress on Plaintiff.  He was obviously upset that she was suing him and helping to expose the egregious and illegal nature of the content that he collaborates on and posts on his site regarding private citizens which cause emotional harm, as well as creating physical danger for the subjects of the posts.  Couple this with the fact that Defendants did not argue in their Motion to Dismiss that Defendant Richie's conduct was not solely to inflict emotional distress, it is clear that Plaintiff has sufficiently plead this element.

Defendants similarly do not argue that Plaintiff has not sufficiently pled that she has suffered extreme emotional distress or that Defendants conduct was the cause of the distress she has suffered.  The conduct caused Plaintiff to suffer from anxiety and paranoia, constantly worry about what portion of her private life would be bared to the public without her consent and had to worry about false statements being published for the world to see.  It is clear Plaintiff has

sufficiently plead that she has suffered from extreme emotional distress and that it was Defendants' conduct that caused the distress.

Defendants do seem to contend that S.C's claim is not viable because Defendants' conduct is not extreme and outrageous as a matter of law. However, this behavior is precisely the type of conduct that would make a neutral observer exclaim "Outrageous!" Admittedly, Courts have always had a difficult time exactly defining what constitutes extreme and outrageous conduct in the context of the tort of intentional infliction of emotional distress. Missouri state courts have stated: "A precise definition of 'extreme and outrageous' conduct cannot be found in our case law….This lack of a clear definition of the prohibited conduct is understandable. The term outrageousness as used is neither value free or exacting. It does not objectively describe an act or a serious of acts; rather, it represents an evaluation of behavior." *Boes v. Deschu*, 768 S.W.2d 205, 207 (citations omitted). But, Missouri courts have also accepted the test for actionable conduct in Restatement (Second) of Torts, §46 (1965) which is:

> "whether conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in civilized community. Generally, the case is one in which the recitation of facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim 'Outrageous!'"

Further, "The extreme and outrageous character of the conduct may arise from the actor's knowledge that the other is peculiarly susceptible to emotional distress…" *Boes* at 208. This case is similar to *Boes* in that respect. The *Boes* Court found extreme and outrageous conduct existed in showing the plaintiff in that case a film featuring mutilated advanced fetuses while having knowledge of plaintiff's extreme vulnerability to emotional distress regarding her previous abortion. Here, as Defendant had knowledge that his previous conduct that resulted in defamatory material and false and embarrassing private facts about Plaintiff being posted on his

site had caused her extreme emotional distress resulting in her having to seek professional medical help, his current conduct in requesting that his thousands of readers located all over the world, and more importantly in her hometown, provide dirt on Plaintiff without regard to truth cannot be viewed as anything other than conduct beyond the bounds of decency. (Also compare *Bradley v. Hall*, 720 N.E.2d 747, 752 (Ind.App. 1999) (finding that genuine issue of material fact existed as to whether supervisor engaged in extreme and outrageous conduct by allegedly shouting at the employee, criticizing her work in front of other employees, inquiring about her menopause and whether her husband was sexually impotent from his diabetes) and *Polk v. INROADS/St. Louis, Inc*., 951 S.W.2d 646 (Mo.App. E.D. 1997) (where extreme and outrageous conduct was found when Inroads targeted plaintiff by confiscating files from her office and by altering company documents relating to her vacation time to make it appear that she had taken more vacation than permitted and more than she actually had, had plaintiff followed at work and made at least six prank phone calls to plaintiff's home when she was on sick leave.))

Given the facts of this case, and Defendants' conduct, an average member of the community would arouse resentment against Defendant (and judging by the link provided in Defendants' motion, many certainly already do) for this behavior simply because this type of conduct is blatantly reprehensible. Defendants' website gets thousands of views and the offending post was placed in the "Kansas City" category (Plaintiff's city of residence) making it substantially likely it would be seen by readers with knowledge of Plaintiff, or access to knowledge of Plaintiff. Further, given that the original post contained her picture, name, and city of residence, physical danger, not just emotional distress, was possible. Judging by the content of Defendants' site, his readers have no qualms about going to great lengths to get information to post to the site (or for that matter blatantly making things up). It is clear that Defendants'

conduct is extreme and outrageous, or at a minimum a reasonable debate can be had about the outrageousness of Defendants' conduct. As such, Plaintiff has sufficiently pleaded this element of intentional infliction of emotional distress.

Defendant, however, cites to *Collins v. Purdue*, 703 F.Supp.2d 862, (ND Ind. 2010) for the proposition that, as a matter of law, Defendants' conduct in the present case cannot be found to be extreme and outrageous. This proposition fails for many reasons, not the least of which is that *Collins* is easily distinguishable from the present case. In *Collins*, the plaintiff was suing the publisher of a student newspaper for intentional infliction of emotional distress because the paper published a news article that implied that plaintiff was involved in the disappearance and possible murder of another student on campus. In his complaint, plaintiff asserted that "inviting readers' comments about the article and publishing them on the website constituted the outrageous conduct element necessary for the claim of intentional infliction of emotional distress." *Collins*, 703 F.Supp.2d at 874. The Court stated in response that "publishing the article on the site and allowing readers' comments cannot be regarded as outrageous." *Id.* at 874. Defendants have misapplied the rationale in *Collins* to the present case. This case obviously does not deal with any sort of reputable news outlet like a newspaper. And, while it is well established that online newspapers commonly allow readers to post comments at the end of their articles, and www.thedirty.com has a similar format, it is not the simple fact that comments are allowed to be posted that gives rise to Plaintiff's cause of action. In *Collins*, the newspaper allowed readers to comment on the legitimate news article. Neither the author of the article nor the publisher of the site personally invited the readers to comment. In this case, Defendant Richie asked thousands of people in a public forum to provide details and information about a private citizen, with an expectation of privacy for no other reason than to cause Plaintiff

emotional distress. It is obviously not the simple fact that comments were allowed that amounts to extreme and outrageous conduct here. This is not only dangerous given the information already provided on the site about Plaintiff, but it subjects her private life to unwanted scrutiny and invites all manners of strangers and weirdos to pry into her private life to help Richie because, as he says, its "game on" and they are his "Dirty Army." The fact that comments were posted about Plaintiff (and only recently removed by the website) is important, but not dispositive of the point. It is the behavior of Defendant Richie and his conduct in the face of his knowledge of Plaintiff and the situation at hand that gives rise to the tort.

## II. Conclusion

Plaintiff has stated a viable claim for intentional infliction of emotional distress. Defendants have wrongly centered their arguments on conduct that does not give rise to the tort, and have chosen to muddy the water because they realized that Defendant Richie's conduct is clearly not covered by Communications Decency Act immunity here as he would be deemed an information content provider under the CDA. There is clearly a material issue of fact that exists to Plaintiff's sixth count in her First Amended Complaint. Defendants failed to argue that Plaintiff did not sufficiently plead the elements of intentional infliction of emotional distress, except for the extreme and outrageous conduct element. However, for the reasons stated above, it is at a minimum, reasonably debatable that Defendant Richie's conduct was extreme and outrageous, and a jury should be able to ultimately decide the question.

Respectfully submitted,
THE O'CONNOR LAW FIRM, P.C.


By:     /s/ Matthew J. O'Connor
         Matthew J. O'Connor, MO#41834

10

Bradly H. Bergman, MO #60497
Mid-America Trial Lawyers
523 Grand, Suite 1B
Kansas City, Missouri 64106
Telephone: (816) 842-1111
Facsimile: (816) 842-3322
mjoc@workingforjustice.com
bhb@workingforjustice.com
ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on 8/26/11 a true and accurate copy of the foregoing document was served via the court's ECF system and via First Class U.S. Mail, postage prepaid to:

Darren K. Sharp
Armstrong Teasdale, LLP
2345 Grand Blvd. STE 2000
Kansas City, MO 64108

And

David S. Gingras
Gingras Law Office, PLLC
3941 E. Chandler Blvd., #106-243
Phoenix, AZ 85048

**Attorneys for Defendants**

/s/ Matthew J. O'Connor_____
Matthew J. O'Connor

11