# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| S.C., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| DIRTY WORLD, LLC, a Delaware limited ) | |
| liability company, ) | Case No: 4:11-cv-392 |
| ) | |
| and ) | |
| ) | |
| NIK RICHIE, an individual, ) | |
| ) | |
| Defendants. ) | |

## REPLY SUGGESTIONS IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

ARMSTRONG TEASDALE LLP

BY:/s/ Darren K. Sharp
Darren K. Sharp          MO #50841
2345 Grand Boulevard, Suite 2000
Kansas City, Missouri 64108
816.221.3420
816.221.0786 (facsimile)
dsharp@armstrongteasdale.com

AND

GINGRAS LAW OFFICE, PLLC
David S. Gingras (admitted *pro hac vice*)
3941 E. Chandler Blvd., #106-243
Phoenix, AZ 85048
Tel.: (480) 668-3623
Fax: (480) 248-3196
DAVID@GINGRASLAW.COM

**ATTORNEY FOR DEFENDANTS**

Because Plaintiff's opposition contains very little substance, this Reply will be very brief. Less than 30 days since her First Amended Complaint (Doc. #28) was filed, Plaintiff now concedes that the sixth cause of action in that pleading (Public Disclosure of Private Facts) is entirely groundless and that this claim should be dismissed. As such, the only remaining issue is whether Plaintiff's fifth cause of action (Intentional Infliction of Emotional Distress) should also be dismissed for failure to state a claim.

In that regard, Plaintiff has substantially narrowed her position suggesting the claim is not based in any way upon Mr. Richie's decision to post a copy of this Court's order denying Plaintiff's Motion to Seal even though that conduct was repeatedly cited and emphasized throughout her pleading. Rather, Plaintiff now asserts this claim is based *solely* on the fact that "Defendant took the opportunity when reporting the Court's Order to go beyond talking about the case and nefariously ask his thousands of readers to provide him with information about Plaintiff's private life without regard to truth or accuracy because it is 'game on.'" Opp. at 2.

This argument fails for several reasons. First and most obviously, nowhere in the First Amended Complaint does Plaintiff allege that Mr. Richie asked "readers <u>to provide him with information about Plaintiff's *private life without regard to truth or accuracy*</u>." (emphasis added). On the contrary, as alleged in ¶ 25 of the FAC, Plaintiff actually alleged that Mr. Richie stated: "If you know this (S.C.) girl please fill me in because now it is game on."

Nothing in Mr. Richie's short statement specifically asked readers to provide information about Plaintiff's "private life", nor does Plaintiff allege that anyone actually provided "private" information about her in response to this request. Of course, just because Plaintiff chooses to designate every aspect of her life as "private" does not entitle her to sue everyone who offends her sensibilities. *See* RESTATEMENT (SECOND) OF TORTS § 652D, cmt. c (explaining, "Complete

1

privacy does not exist in this world except in a desert, and anyone who is not a hermit must expect and endure the ordinary incidents of the community life of which he is a part. Thus he must expect the more or less casual observation of his neighbors as to what he does, and that his comings and goings and his ordinary daily activities, will be described in the press as a matter of casual interest to others.")

Indeed, by voluntarily commencing this action, Plaintiff has made herself a legitimate subject of public interest and scrutiny and, in fact, Plaintiff's lawyer has actively exploited this matter by giving several media interviews regarding this case, including one interview in which counsel falsely implied that this Court has somehow determined that this action is *not* barred by the Communications Decency Act; "O'Connor said his case has been approved by a Federal Judge to move forward here in Kansas City." http://www.nbcactionnews.com/dpp/news/science_tech/kansas-city-attorney-sues-a-gossip-website%2C-he-claims-their-posts-hurt-his-young-client%27s-reputation#ixzz1XTf6URVq (visited Sept. 9, 2011). Given these facts, Plaintiff has no right to prevent the public, including Mr. Richie, from discussing her or her actions whether these comments relate to this action or simply to Plaintiff herself:

> There are other individuals who have not sought publicity or consented to it, but through their own conduct or otherwise have become a legitimate subject of public interest. They have, in other words, become "news." [This includes] victims of crime … as well as those who are the victims of catastrophes or accidents <u>*or are involved in judicial proceedings* or other events that attract public attention. These persons are regarded as properly subject to the public interest, and publishers are permitted to satisfy the curiosity of the public as to its heroes, leaders, villains and victims</u>, and those who are closely associated with them. As in the case of the voluntary public figure, <u>the authorized publicity is *not limited* to the event that itself arouses the public interest, and to some reasonable extent includes publicity given to facts about the individual that would otherwise be purely private</u>.

RESTATEMENT (SECOND) OF TORTS § 652D, cmt. f (emphasis added) (discussing the substantially reduced privacy rights of even *involuntary* public figures).

2

Likewise and contrary to her own arguments, Plaintiff does not allege that Mr. Richie suggested that anyone should submit *false* information about her, nor does she allege that anyone actually provided any false information in response to the request. These points are mere window dressing intended to disingenuously make Mr. Richie's conduct appear more offensive than it actually was. Indeed, the sole allegation is that Mr. Richie simply asked readers to "fill him in" about Plaintiff if they were acquainted with her. These allegations plainly fail to state a viable cause of action.

As Plaintiff also correctly anticipates, Defendants' position is that as a matter of law Mr. Richie's conduct cannot and does not rise to the level of "utterly deplorable" conduct as required to establish the tort. Again, contrary to Plaintiff's position, this is not a question of fact for a jury, rather; "It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery … ." RESTATEMENT (SECOND) OF TORTS § 46, cmt. h (1965). Here, Mr. Richie's generalized request for information about Plaintiff was non-tortious as a matter of law because even if his conduct was annoying or upsetting, it was not so extreme and outrageous as required to be actionable:

> The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. <u>There is no occasion for the law to intervene in every case where some one's feelings are hurt</u>. There must still be freedom to express an unflattering opinion, and some safety valve must be left through which irascible tempers may blow off relatively harmless steam.

RESTATEMENT (SECOND) OF TORTS § 46, cmt. d (1965) (emphasis added). As was explained in Defendants' Motion to Dismiss, the fact that a website generally "invites" comments about a particular person is not "extreme and outrageous" as a matter of law. *See generally Collins v. Purdue*, 703 F.Supp.2d 862 (N.D. Ind. 2010).

3

Plaintiff weakly attempts to distinguish *Collins* by hurling further groundless insults at Defendants, implying that unlike the college newspaper at issue in that case, "This case obviously does not deal with any sort of *reputable* news outlet like a newspaper." Opp. at 9 (emphasis added). This emotionally-based argument is both wrong and completely beside the point.

Whether commentary about Plaintiff is invited by Mr. Richie, Harvard Law School, NBC Action News, Purdue University's school paper or the National Enquirer is wholly irrelevant to the question of whether this general *type* of conduct is so outrageous as to constitute an actionable tort. In a free country such as the United States of America, in addition to enjoying the rights and freedoms protected by the First Amendment (which include the right to express negative opinions about another person), every defendant in litigation has an absolute right to investigate the allegations made against him, and in a case which includes allegations of defamation such as Plaintiff has presented here, the question of truth is always relevant. *See Wunsch v. Sun Life Assur. Co. of Canada*, 92 S.W.3d 146, 156 (M.O.App.W.D. 2002) (explaining, "truth may always be asserted as an absolute defense … .")

While Mr. Richie's statement that "it's game on" was an obvious taunt, the fact remains that as a matter of law, given Plaintiff's decision to commence this action in the first place, Mr. Richie is entitled to investigate Plaintiff's allegations, and this necessarily includes asking his readers for any information they may have which could bear on relevant issues such as the truth of the statements at issue, matters of Plaintiff's credibility, and damages, among other things. In that context, it is simply *not* extreme and outrageous to ask the public whether they may have information which may be helpful and relevant to the defense of a pending lawsuit.

4

Because Plaintiff has failed to allege facts sufficient to support this mandatory element of her fifth cause of action, that claim should be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

ARMSTRONG TEASDALE LLP

BY:*/s/ Darren K. Sharp*
Darren K. Sharp    MO #50841
2345 Grand Boulevard, Suite 2000
Kansas City, Missouri 64108
816.221.3420
816.221.0786 (facsimile)
dsharp@armstrongteasdale.com

AND

GINGRAS LAW OFFICE, PLLC
David S. Gingras (admitted *pro hac vice*)
3941 E. Chandler Blvd., #106-243
Phoenix, AZ 85048
Tel.: (480) 668-3623
Fax: (480) 248-3196
DAVID@GINGRASLAW.COM

**ATTORNEY FOR DEFENDANTS**

## Certificate of Service

I hereby certify that a copy of the foregoing document was served via the Court's ECF system and via Regular U.S. Mail this 9th day of September 2011 to:

Matthew J. O'Connor, Esq.
Bradly H. Bergman, Esq.
Mid-America Trial Lawyers
523 Grand Blvd., Suite 1B
Kansas City, Missouri 64106
mjoc@workingforjustice.com
bhb@workingforjustice.com

**Attorneys for Plaintiff**

*s/ David S. Gingras*
Attorney for Defendants