IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| S.C., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:11-cv-392 |
| ) | |
| DIRTY WORLD, LLC, a Delaware limited ) | |
| liability company, ) | |
| ) | |
| And ) | |
| ) | |
| NIK RICHIE, an individual ) | |
| ) | |
| ) | |
| Defendants. ) | |
| ) | |

**PLAINTIFF'S SUGGESTIONS IN OPPOSITION TO DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT**

Plaintiff, by and through counsel, and in opposition to Defendants' Renewed Motion for Summary Judgment, states as follows:

THE O'CONNOR LAW FIRM, P.C.

By: /s/ Matthew J. O'Connor
Matthew J. O'Connor, MO#41834
Bradly H. Bergman, MO #60497
Mid-America Trial Lawyers
523 Grand, Suite 1B
Kansas City, Missouri 64106
Telephone: (816) 842-1111
Facsimile: (816) 842-3322
mjoc@workingforjustice.com
bhb@workingforjustice.com
ATTORNEYS FOR PLAINTIFF

# **TABLE OF CONTENTS**

Table of Authorities……………………………………………………………………….…i

I.  Statement of Facts In Which a Genuine Issue Exists…………………………....……1

II. Nik Richie specifically encouraged and materially contributed to the offensiveness of the content in question and is therefore shielded from the cloak of immunity provided by the Communication Decency Act……………………………………………………….....…..2

    A. Nik Richie's Posts are not Protected under the CDA because he is an information content provider.……………………………………………………………………3

        1. Defendants can be, and are both internet service providers and information content providers………………………………………………………………………….4

        2. Richie has developed the illegal content of his site and the Nasty Church Girl post in particular…………………………………….....…………………………………..5

            a). The individual who submitted the Nasty Church Girl post EXPECTED collaboration with and contribution by Richie in the "Would You?" category…………….…………….…………………………………...…7

            b). Richie's actions and interactions with his readers and the overall tenor of his website specifically encourage and materially contribute to the offensiveness of his site……………………………………………………..……………..…….8

    B. Defendants have previously been found to be information content providers as developers of offensive content under the CDA in fact patterns extremely similar to the instant case……………………………………………….…………………11

        1. Thedirty.com's nature and Richie's actions encourage what is offensive about the site………………………………………………………………..…………………12

        2. Nik Richie's interaction with "The Dirty Army" encourages posting offensive and illegal material………………………………………………………………….12

        3. This Court should follow the rationale of the E.D. of Kentucky and find that Defendants have developed the offensive content in the Nasty Church Girl post…...13

    C. The website www.thedirty.com is different and distinct from other sites found to enjoy CDA immunity by federal courts…………………………………...……13

IV. Conclusion………………………………………………………………………..…16

# TABLE OF AUTHORITIES

**Cases:**

*Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1167 (9th Cir. 2008)……………………………………………………………………………….5, 6, 11

*Fair Housing Council v. Roommates.com, LLC*, 489 F.3d 921, 928 (9th Cir. 2007), rev'd en banc, 521 F.3d 1157 (9th Cir. 2008)…………………………………………………………………..6, 7

*FTC v. Accusearch, Inc.*, 570 F.3d 1187, 1199 (10th Cir. 2009)……………………………...6, 11

*Goddard v. Google*, 2008 WL5245490, at *3 (N.D.Cal., Dec. 17, 2008)……………………….15

*Johnson v. Arden*, 614 F.3d 785, 791 (8th Cir. 2010)……………………………………...4, 14, 15

*Johnson v. Enron Corp.*, 906 F.2d 1234, 1237 (C.A.8 (Neb.), 1990)…………………………….3

*Jones v. Dirty World Entertainment Recordings, LLC, et al*. case number 2:09-cv-00219-WOB, Doc. 76. (ED Kent. Jan., 12 2012)……………………………………………………2, 11, 12, 13

*M.A. v. Village Voice Media Holdings, LLC*, ___F.Supp.2d___WL3607660 (E.D. Mo., Aug. 15, 2011)……………………………………………………………………………………….....15

*Phan v. Pham*, 182 Cal.App. 4th 323, 105 Cal.Reptr.3d 791 (Cal. App. 2010)………………….16

*Shiamili v. The Real Estate Group of New York*, ___NE 2d.__, 2011 WL 2313818 (N.Y. Ct. App., June 14, 2011)……………………………………………………………………………15, 16

*Stayart v. Yahoo! Inc.*, 651 F. Supp.2d 873, 886 (E.D. Wis. 2009)……………………………….4

**Statutes:**

47 U.S.C. 47 § 230…………………………………………………………….2, 3, 4, 5, 11, 14, 16

**Other:**

Webster's Third New International Dictionary, 618 (2002)……………………………………….5

### I. Statement of Facts in Which a Genuine Issue Exists.

The facts in which there is a genuine issue are as follows:

1. Nik Richie has developed the content found on www.thedirty.com and has specifically encouraged what is offensive and illegal about the Nasty Church Girl post. (See Defendants' Statement of Uncontroverted Facts ¶ 27 and *Richie Depo.* pg. 31 ln 8-16, 25; pg. 32 ln 1-6; pg. 27-8 ln 7-25, 1-17; pg. 37 ln 15-25; pg. 38 ln 14-18; pg. 40 ln 10-12; pg. 41 ln 1-18; pg. 42 ln 13-18; pg. 56 ln 10-15; pg. 60 ln 1-5, 7-16).

2. Nik Richie created the Nasty Church Girl post as his readers only see the final collaboration of "Question and Answer" between himself and the third party in the post. The "post" is a collaboration of both the content submitted and his answer. Mr. Richie ratified the contents of the post as his own as he only puts on his website posts that have content he believes and deletes those he does not believe. (See Defendants' Statement of Uncontroverted Facts ¶ 24 and See *Richie Depo*. pg. 37 ln 15-25; pg. 38-9 ln 14-17, 24-25; 1-10; pg. 19-20 ln 19-25, 1-8; pg. 37 ln 15-25; pg. 38-9 ln 14-18, 24-25, 1-10; pg. 25 ln 4-18; pg. 29-30 ln 24-25; 1-8).

3. A third-party did not create all of the defamatory and/or tortious text in ¶ 16 of Plaintiff's complaint as Nik Richie ratified it as his own. (See Defendants' Statement of Uncontroverted Facts ¶ 21 and See *Richie Depo*. pg. 25 ln 4-18; pg. 29-30 ln 24-25; 1-8).

4. That requests in the "Would You?" category are not taken literally by those who regularly visit Defendant's site is an unsupported assertion that is not supported in the record and cannot be known as fact. (see Defendants' Statement of Uncontroverted Facts ¶ 17).

1

## II. Nik Richie specifically encouraged and materially contributed to the offensiveness of the content in question and is therefore shielded from the cloak of immunity provided by the Communication Decency Act.

Why is www.thedirty.com different than other websites that have been found to be immune under the Communication Decency Act? Simply put, the site's owner and operator, Nik Richie, encourages the offensive and defamatory material found on thedirty.com in a manner not seen in other cases. He does so through the quantity and nature of his interaction with his readers, the so-called "Dirty Army," by the very purpose for which he has developed thedirty.com, and how and why he picks and chooses particular content to place on thedirty.com. Other District Courts have now begun to see through this façade, and have prevented him from continuing to hide behind the protection of the Communication Decency Act.

On January 10, 2012 the United States District Court for the Eastern District of Kentucky found that Nik Richie and www.thedirty.com WERE NOT immune from suit under the Communication Decency Act, 47 U.S.C. 47 § 230 ("CDA") in an almost identical fact pattern as found here. *Jones v. Dirty World Entertainment Recordings, LLC, et al.* case number 2:09-cv-00219-WOB, Doc. 76. (ED Kent. Jan., 12 2012). In denying Richie's Motion for Summary Judgment that court found that thedirty.com's very nature as well as Richie's actions MATERIALLY CONTRIBUTE to the offensiveness of the site, and his interaction with his readers ENCOURAGES the posting of offensive and illegal material making Richie an information content provider and not immune from suit. (*Jones* at *9-10). For those same reasons, Defendants' Motion for Summary Judgment should be denied.

"A court should grant a summary judgment motion if the full record discloses that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law…. In addition, the court must give the benefit of all favorable factual inferences to the party

2

opposing summary judgment." *Johnson v. Enron Corp.*, 906 F.2d 1234, 1237 (C.A.8 (Neb.), 1990). Here, factual inferences favor finding that Defendants are information content providers as through the actions of Defendant Richie, the nature of wwww.thedirty.com, and the set up and execution of the "Would You?" category they developed, in whole or in part, specifically encouraged and materially contributed to the illegality of the following defamatory content about Plaintiff which was seen on Defendants' website under the heading "Nasty Church Girl:"

> "Nik, I was living in Miami Beach for 4 months for work, and this nasty bitch [Plaintiff] who was my "friend" started fcking (sic) my boyfriend in my bed and bringing her nasty ass horse teeth around my son trying to play house. This slut claims to be a sweet little church girl. She even works for the church! Fugly slut! Is this girl worth having sex with??? I wouldn't think so! LEES SUMMIT SLUT!!" ("Nasty Church Girl post") Compl. (Doc. #1) ¶ 16.

Thedirty.com is operated as a way to post images and information about private citizens without regard to truth, veracity, or legality. It is nothing more than a virtual gas station bathroom wall, where one may anonymously write the most vile and offensive content about one's neighbor, except in thedirty.com's case, the gas station attendant, Nik Richie, is standing next to the person writing on the wall, laughing encouragement and even joining in the "fun" with his own comments.

### A. **Nik Richie's posts are not protected under the CDA because he is an information content provider.**

The issues in this case can essentially be boiled down to one question: "Are Defendants information content providers?" If Defendants are found to be information content providers, then they are not immune under the CDA and may be held liable for the defamatory and tortious statements found in the Nasty Church Girl post on their website. Richie and his website are information content providers as defined by the CDA because they have developed, in whole or in part, the defamatory and offensive post in question.

3

### 1. Defendants can be, and are, both interactive service providers and information content providers.

Defendants are not afforded protection under the CDA because they are NOT JUST interactive service providers (because they operate a website); they are also information content providers with respect to the development of offensive and illegal material on their site like the Nasty Church Girl post. The CDA has been found to "bar plaintiffs from holding Internet Service Providers legally responsible for information that third parties created and developed." *Johnson v. Arden*, 614 F.3d 785, 791 (8th Cir. 2010). The text of the CDA provides that no "provider or users of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." CDA § 230(c)(1). The Act further defines an information content provider as any "entity or person that is responsible, in whole or in part, for the creation or development of information provided through the internet…" CDA § 230 (f)(3). In essence, in order to be denied immunity under the CDA, one must be found to be an information content provider.

In other cases dissimilar to the case at bar, the District Courts have found that the CDA provides very broad protection for interactive service providers ("ISP"), such as websites, from suits based on content others have provided. However, it has been well established that a website can be BOTH a service provider and a content provider: "If it passively displays content that is created entirely by third parties, then it is only a service provider with respect to that content. But as to content that it creates itself, or is responsible in whole or in part for creating or developing, the website is also a content provider.'" *Stayart v. Yahoo! Inc.*, 651 F. Supp.2d 873, 886 (E.D. Wis. 2009). Thus, there can be more than one information content provider for each piece of defamatory material and while parts of the website may garner immunity under the CDA, Defendants could and should still be found liable for the Nasty Church Girl post.

4

### 2. Richie has developed the illegal content of his site and the Nasty Church Girl post in particular.

Defendants continue to assert a knee-jerk response and claim that they did not "create" any of the defamatory content, without recognizing that they are just as liable for developing the content as they would be if they had "created" it themselves. The case at bar is not a situation where, as defense counsel well knows from his representation of the www.theripoffreport.com, the site allows each and every submitted item to be posted to their site. To the contrary, Mr. Richie and "The Dirty" hand select those juicy tidbits of trash that are titillating to the public. To be found an information content provider under the CDA, Defendants must be responsible, "in whole or in part, **for creating or developing the offensive content**." There are two very important things to take away from this definition. First, an information content provider does not have to CREATE the offensive content, but it is sufficient to deny immunity under the CDA if it is found that one is responsible for DEVELOPING the tortious material. Second, an ICP does not have to create or develop ALL of the offensive content, rather one only need to develop "in part" that content for immunity to be denied. This means that the offensive content does not have to originate entirely from the website. (*See Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1167 (9th Cir. 2008) "Reading the exception for co-developers as applying only to content that originates entirely with the website…ignores the words 'development…in part' in the statutory language.").

§ 230 of the CDA itself does not define the terms "develop" or "development." The 9th Circuit in *Roommates.com* posited a definition of developed as "making usable or available." *Roommates.com*, 521 F.3d 1157 at 1168. Similarly, dictionary definitions for *develop* revolve around the act of drawing something out, making it `visible,' `active,' or `usable.' Webster's Third New International Dictionary, 618 (2002). The question, then, is whether thedirty.com is

5

responsible for the development of the illegal content.  "[T]o be `responsible' for the development of offensive content, one must be more than a neutral conduit for that content." *FTC v. Accusearch, Inc*., 570 F.3d 1187, 1199 (10th Cir. 2009).  The test, then, for whether a service provider has "developed" content is that "a service provider is 'responsible' for the development of offensive content only if it in some way ***specifically encourages development of what is offensive about the content.***" (emphasis added) *Accusearch, Inc*., 570 F.3d at 1199.

 Under the rationale of both the *Roommates.com* and *Accusearch, Inc*. courts and the definitions provided by the CDA, Defendants are information content providers and are responsible for the development of the Nasty Church Girl post because they specifically encourage development of what is offensive about the content through the tenor of the website and Richie's own actions in commenting on posts and interaction with his readers.  Thedirty.com exists solely for people to post "dirt" about their neighbors without regard for truth. In order to submit the "dirt" to the website, users must upload content to the website via a submission form found on the website itself before Richie reviews and actually puts the content on the site.  They must upload an image along with any comment that they wish and have the option of selecting which "category" that they would like the post to go into.  (*Richie Depo* pg. 19-20 ln. 19-25; 1-8; *Richie Affidavit*. ¶13-15)[1]. These categories can be the city where the subject of the post is from, the college that they attend, or other categories such as the "Would You?" category.

 As an interesting note, in the panel decision of *Roommates.com*, the Honorable Judge Kozinzki posited an example of a website soliciting information for an illegal purpose that would preclude protection from liability which is strikingly similar to Defendants' website:

> "Imagine for example, www.harrassthem.com with the slogan "Don't Get Mad, Get Even."  A visitor to this website would be encouraged to provide private sensitive, and/or defamatory information about other-all to be posted online for a fee.  To post the

---

[1] The cited to and relevant portions of Defendant Richie's deposition are attached as "Exhibit A".

6

Case 4:11-cv-00392-DW   Document 52   Filed 02/08/12   Page 9 of 20

information, the individual would be invited to answer questions about the target's name, addresses, phone numbers…and the like. In additions, the website would encourage the poster to provide dirt on the victim, with instructions that the information need not be confirmed, but could be based on rumor, conjecture, or fabrication." *Fair Housing Council v. Roommates.com, LLC*, 489 F.3d 921, 928 (9th Cir. 2007), rev'd en banc, 521 F.3d 1157 (9th Cir. 2008).

The example given by Judge Kozinzki is quite analgous to Defendants' website where the names, cities of residence, college, and even photograph are posted and dirt is encouraged to be posted about the "victim" without regard to accuracy.

### a). The individual who submitted the Nasty Church Girl post EXPECTED collaboration with and contribution by Richie in the "Would You?" category.

Defendants have developed portions of their website to be almost an interactive conversation between Richie and his readers, particularly the "Would You?" category in which the defamatory Nasty Church Girl post regarding Plaintiff was placed. The basic concept of this category is that readers submit images of an individual along with comments about that individual and ask Richie's opinion whether or not he would have sex with that person. The vast majority of these submissions are addressed directly to Richie (In this case the Nasty Church Girl post was addressed directly to Defendant Richie; See also "Exhibit B"). (*Richie Depo* pg. 37 ln 15-25). Defendant Richie then reviews the submissions, and solely decides which he will actually publish to the site and then will add his "answer" to the users query about the individual in question. (*Richie Depo* pg. 19 ln 24-5; pg. 20 ln 1-8; pg. 40 ln 10-12). Interestingly, Defendant Richie only actually publishes 25% of the submissions to his site, evidencing a thorough and thought out method to what gets posted. (*Richie Depo* pg. 20 ln 6-7). However, though selective, he does not verify the accuracy of any of the statements in the submissions. (*Richie Depo* pg. 38 ln 14-17; pg. 39 ln 3-10; pg. 56 ln 10-15). Defendant Richie does, though, add his own comments on all of the submissions selected to be posted to the site, answering

7

whether he would have sex with the individual. (*Richie Depo* pg. 38-9 ln 24-25; 1-2; pg. 56 ln 10-15). Thus, no reader will see the submitted "question" until it is packaged with Defendant Richie's "answer." In this way, Defendant Richie collaborates with the third party content provider on the final product seen on the website.

Most importantly, *the category would not exist without the back and forth between the users and Defendant Richie.* Defendants argue that Defendant Richie answers "no" to 99.999% of the submissions in this category, and that he then finds something "funny" to say about the person who is the subject of the post as satire. (*Richie Depo* pg. 38 ln 14-18). That argument should not be persuasive. It is clear that readers submit content to the "Would You?" category because they are seeking Defendant Richie's answer and because Defendant Richie WILL provide an answer. In fact, the users EXPECT an answer from Defendant Richie when they submit content to that category. (*Richie Depo* pg. 60 ln 1-5, 7-16). Without his comments it would be like the sound of one hand clapping. Because Defendant Richie has developed this category so that readers know he says "no" and adds offensive comments to virtually all of these submissions, it encourages his readers to use the category as a specific way to put down the subject of the post, as was done in this case with the Nasty Church Girl post. The individual who submitted the original content of the Nasty Church Girl post KNEW Richie would answer whether he would have sex with the so called "LEE'S SUMMIT SLUT" and KNEW he would add his own "funny" derogatory comment before anyone else saw her post. She expected to see her content on the site ONLY with Richie's contribution. Simply because they do not require the posting of defamatory material does not mean that they do not develop, at least in part, the defamatory content posted on their site.

    **b). Richie's actions and interactions with his readers and the overall tenor of his website specifically encourage and materially contribute to the**
8

**offensiveness of his site.**

That defendant and his website encourage and seek out offensive content has been obvious since its earliest incarnation. The website began as www.dirtyscottsdale.com before gaining popularity, adding different cities and taking the geographically neutral name www.thedirty.com. (*Richie Depo* pg. 10 ln 11-21). In its original form, the website sought "civilian papparrazzi" to shoot the night life and wannabe Paris Hilton's and people who need "wake up calls." (*Richie Depo* pg. 16-7 ln17-25; 1-9). This has morphed into the current site where anyone can post any kind of "dirt" about anyone. However, the reason behind the website remains the same.

Defendant Richie has recently postured himself in a saintly light as he now would like us to believe that his job, and the websites purpose, is to give people "wake up calls" so that they may see themselves in a different light, saying: "Because, really, realistically, what I'm trying to do is let people see what's going on instead of people talking behind their back, trying to give them that wake-up or motivation to get help." (*Richie Depo* pg. 31 ln 8-16, 25; pg. 32 ln 1-6). For example, Defendant Richie even believes that he is doing a public service by allowing posts claiming specific private citizens have sexually transmitted diseases without any corroboration! (*Richie Depo* pg. 41 ln 1-18; pg. 42 ln 13-18). There cannot be any clearer evidence that Richie has materially contributed to and specifically encouraged what is offensive and illegal about his site. It is well established in virtually every jurisdiction that publishing to the public information about a private citizen's sexual morals or intimating they have a sexually transmitted disease without corroboration is offensive and defamatory.

Since Defendant Richie is the sole vote on what gets on the site, it seems that he feels that posting about someone's sexual chastity, morals, or sexual health will help more than it will hurt.

(*Richie Depo* pg. 32 ln 7-12) If Richie doesn't believe the information in the post, he will delete it. (*Richie Depo* pg. 29-30 ln 24-25; 1-8). Thus, by posting the content on the site, and adding his comments, he is effectively ratifying the submitted content because he obviously then believes it and wants to give that person a "wake-up call". (Despite his "mission" he never offers anyone real help in the form of information about treatment programs because: "I don't know these people, so I'm not qualified to make that kind of advice. But my job is whatever content comes in by a third party is to get it out there." *Richie Depo* pg. 31 ln 17-24). Defendant Richie believed that the Nasty Church Girl post was an accurate depiction of who S.C. was, though he neither knew her nor the third party that submitted the content, and without any corroboration about the information in the post because he believed the person who submitted the content must have known her. (*Richie Depo* pg. 25 ln 4-18).

Further, Richie's interaction with his readers encourages and contributes to the offensiveness of his site. Richie routinely asks his readers to provide information about subjects of posts on his site (as evidenced in this case by his asking his readers to provide him with information about S.C.) and encourages all his readers to post dirt about people that they know. This interaction is further evidenced by the offensive and unique lingo that Defendant Richie and his readers have developed and use in their posts that fuel the offensive tenor of the site. Defendant Richie uses phrases at times such as "Dennis Rodman Disease" meaning a sexually transmitted disease, "purple crayon" meaning a black man's penis, "cougars" meaning older women chasing younger men, "trout" meaning older men chasing younger women and "greg" (which I believe is short for Gregory) referring to his own penis. (*Richie Depo* pg. 27-8 ln 7-25, 1-17). This lingo encourages submissions about such illegal and defamatory content as whether someone may have a sexually transmitted disease by trying to paint it as "humorous," familiar,

10

and acceptable. Thus, despite the broad protection afforded websites by the CDA, Defendants should not be immune from suit because through Defendants actions and the structure and history of Defendants' website, it is clear that the Defendants are information content providers as to the Nasty Church Girl post, which is a true collaboration between Defendant Richie and the third party. In fact, other district courts have already determined this to be the case, that Defendants are not immune from suit and do, in fact, develop the content found on their site.

**B. Defendants have previously been found to be information content providers as developers of offensive content under the CDA in fact patterns extremely similar to the instant case.**

Despite the broad immunity provided by the CDA, www.thedirty.com has been found to not enjoy that protection. On January 10, 2012, the Honorable Judge Bertelsman of the United States District Court, Eastern District of Kentucky handed down his opinion in regard to a summary judgment motion filed on behalf of Dirty World, LLC. and Nik Lamas-Richie in *Jones v. Dirty World Entertainment Recordings, LLC, et al*. case number 2:09-cv-00219-WOB, Doc. 76. (ED Kent. Jan., 12 2012). Upon extremely similar circumstances as found in the instant case, the *Jones* court denied Dirty World and Richie's Motion for Summary Judgment finding that they were information content providers for the purposes of the CDA because they developed the offensive content that was the subject of the suit.

In *Jones*, the plaintiff, who was a Cincinnati Bengal cheerleader and high school teacher, brought suit for defamation and invasion of privacy after being denied removal of two posts on Defendants' website that stated that she had slept with every Cincinnati Bengal player, had sexual intercourse with her boyfriend in the high school where she worked, and that she was infected with several STD's. The Court followed the principals of the *Roommates.com* and *Accusearch, Inc*. courts, and held that the defendants, through the very name of the site, the

11

manner in which it is managed, and the actions of defendant Richie, "specifically encourage development of what is offensive" about the content of www.thedirty.com web site. *Jones v. Dirty World Entertainment Recordings, LLC, et al*. at *8.

1. **Thedirty.com's nature and Richie's actions encourage what is offensive about the site.**

The court considered several factors in determining whether defendants had actually developed the offensive content. First, the court found that by the virtue of the name and very nature of www.thedirty.com in and of itself encourages the posting of material which is potentially defamatory or an invasion of the subject's privacy. The website encourages its readers to post "dirt" without regard to its accuracy, veracity, or most importantly, without the consent of the subject of the post. Second, the court found that Defendant Richie's actions specifically develops what is offensive about the content of the site. The court found that he acts as editor of the site and selects a small percentage of submissions to be posted, reviews the postings but does not verify their accuracy, and decides whether a post shall be removed if someone objects to a posting, that his goal in establishing the site was to bring reality TV to the Internet, wants everyone to check out the site, and that, in his opinion, you can say whatever you want on the internet. *Jones* at *9.

2. **Nik Richie's interaction with "The Dirty Army" encourages posting offensive and illegal material.**

Most importantly, according to the court, was that Defendant Richie adds his own comments to most, if not all, postings, and refers to the fans of the site as "the Dirty Army." It was also the interaction with and comments about "the Dirty Army" that especially got the courts attention. Defendant had made several comments, including "I love how the Dirty Army has war mentality. Why go after one ugly cheerleader when you can go after all the brown baggers" and

12

"Note to self. Never try to battle the Dirty Army" regarding the plaintiff and the lawsuit. *Jones* at *9-10. The court ultimately stated that "One could hardly be more encouraging of the posting of such content than by saying to one's fans (known not coincidentally as "the Dirty Army"): "I love how the Dirty Army has war mentality." *Jones* at *10.

3. **This Court should follow the rationale of the E.D. of Kentucky and find that Defendants have developed the offensive content in the Nasty Church Girl post.**

This Court should follow the rationale of the Eastern District of Kentucky and find that Defendants have developed the offensive content in this case. The fact patterns in the instant case and Jones are eerily similar. Offensive content questioning Plaintiffs sexual morals and chastity was posted on the website, and Defendant Richie refused to remove the post after being requested by Plaintiff. (See generally *Richie Depo* pg. 47-50). Further, Defendant Richie has continually commented on this lawsuit on his site, and made direct comments about Plaintiff, just as in *Jones.* Defendant even went a step further in this case, asking "the Dirty Army" to provide any information they had on Plaintiff because it was "game on." (See Plaintiff's RFA ¶ 28; "Exhibit C") It is this constant connection with his audience and the acceptance and encouragement of not only the "Dirty Army's" war mentality, but also the offensive and vile content that they post that make it clear Defendant Richie is an information content provider. This interaction is further evidenced by the offensive and unique lingo that Defendant Richie and his readers have developed as discussed above as well as the depth and scope of the expected interaction between him and "The Dirty Army" in the "Would You?" category on his site. Each and every reason the *Jones* court espoused for finding Defendants were information content providers is applicable in this case and summary judgment should not be granted here either.

C. **The website www.thedirty.com is different and distinct from other sites found to enjoy CDA immunity by federal courts.**

13

Thedirty.com is distinct from any other website found to enjoy CDA immunity by federal courts. Defendants cite in their Motion to several cases to support their assertion that www.thedirty.com is solely an ISP and is immune from suit under the CDA. However, the cited cases support nothing more than what is already known, that the CDA provides broad immunity for ISPs who are not also acting as information content providers. This fact is not in dispute. As this case is clearly distinct from the various cases cited by Defendants from various District Courts, none of the following cases cited by Defendants are persuasive.

Defendants point first to *Johnson v. Arden*, 614 F.3d 785, 791 (8th Cir. 2010) as it was first heard in the Western District of Missouri and then appealed to the 8th Circuit Court of Appeals. In *Johnson*, Plaintiffs brought suit based on allegedly defamatory statements made about their business, Cozy Kitten Cattery, posted on the internet discussion board, www.complaintsboard.com. Because the defendant that the CDA analysis centered around, InMotion, was solely the host of the website in question, the *Johnson* court found "It is undisputed that InMotion did not originate the material that the Johnsons deem damaging. InMotion is not a "publisher or speaker" as § 230(c)(1) uses those terms, therefore, the district court held that InMotion cannot be liable under any state-law theory to the persons harmed by the allegedly defamatory material." *Johnson* at 791.

It is clear that InMotion was simply the host of the website where the allegedly defamatory material was posted and had no connection with that material. However, it is just as clear in this case that Defendants' have a fundamental connection with the material posted on their website as owners and operators. The *Johnson* court did not reach the question of whether the underlying website or other defendants developed the defamatory content. The court did imply that if InMotion HAD taken steps to induce defamatory content, then the question of

14

liability may have turned out differently. *Johnson* at 791. Here, there is ample evidence in the record that Defendants induce defamatory material, and the recent opinion in *Jones* corroborates this view.

Defendants also cite to a recent Eastern District of Missouri case, *M.A. v. Village Voice Media Holdings, LLC*, ___F.Supp.2d___WL3607660 (E.D. Mo., Aug. 15, 2011). In that case, the offensive material were sexually explicit ads on defendants' website www.backpage.com placed by a child sex trafficker, which included naked photographs of plaintiff. *See Village Voice* 2011 WL 3607660 at *1. The Court held that CDA immunity applied to defendants and that neither notice nor profit could take away that immunity. The Court stated: "Thus, even if a service provider knows that third-parties are posting illegal content, the service provider's failure to intervene is immunized." *Village Voice 2011* WL 3607660 at *1. (quoting *Goddard v. Google*, 2008 WL5245490, at *3 (N.D.Cal., Dec. 17, 2008)). The Court also stated that there was no allegation defendants "specifically encouraged the development of the offensive nature of that content." *Village Voice* 2011 WL 3607660 at *11.

Here, notice of the illegal content, or the simple fact that Defendants profit off of their website are not at issue. Furthermore, unlike www.backpage.com, www.thedirty.com is an interactive website that is not passively displaying the submitted content. Defendant Richie takes an active role in developing and encouraging the content posted by his interaction with "the Dirty Army" and in the creation and execution of categories like "Would You?" where users submit content specifically to get Richie's views and expect an answer from him (Similarly, See another case Defendants cite to, *Shiamili v. The Real Estate Group of New York*, ___NE 2d.__, 2011 WL 2313818 (N.Y. Ct. App., June 14, 2011), where the website in question in was a message board that functioned as a "virtual bulletin board, or open discussion forum (*Shiamili*

15

at *4) and the moderators did not provide their own commentary to each and every comment made on the site, unlike thedirty.com.)

Next, Defendants cite to *Phan v. Pham*, 182 Cal.App. 4th 323, 105 Cal.Reptr.3d 791 (Cal. App. 2010) for the proposition that because Defendant Richie's comments were added to the defamatory content and his comments aren't specifically defamatory, then he should be immune from suit. However, in that case, defendant was found to be immune from a comment he added to an email that he received and then forwarded to others. Quite different than the scenario in this case, as that court found nothing created by Pham was defamatory. Defendants' reliance on this case completely ignores that one may only help develop content and be held liable for that content.

### III. CONCLUSION

It is clear that Defendants are information content providers with respect to the Nasty Church Girl post. Defendants have specifically encouraged and materially contributed to the illegality and offensiveness of the content through Defendant Richie's actions, his interactions with his readers, the nature and tenor of his website, and especially the history, set up and execution of the "Would You?" category on www.thedirty.com. The CDA provides broad immunity from suit, and in the great tradition of the First Amendment, even websites that allow negative commentary are protected. However, www.thedirty.com is not what the CDA was meant to protect. It is more than a simple forum for negative commentary, it is a place where offensive, defamatory, and potentially dangerous information and content about private citizens without their consent is not only tolerated, but ENCOURAGED. These actions by Defendants are within neither the letter nor the spirit of the CDA, and Defendants' Motion for Summary Judgment should be denied.

Respectfully submitted,
THE O'CONNOR LAW FIRM, P.C.


By: /s/ Matthew J. O'Connor
Matthew J. O'Connor, MO#41834
Bradly H. Bergman, MO #60497
Mid-America Trial Lawyers
523 Grand, Suite 1B
Kansas City, Missouri 64106
Telephone: (816) 842-1111
Facsimile: (816) 842-3322
mjoc@workingforjustice.com
bhb@workingforjustice.com
ATTORNEYS FOR PLAINTIFF


# CERTIFICATE OF SERVICE

I hereby certify that on 2/8/12 a true and accurate copy of the foregoing document was served via the court's ECF system and via First Class U.S. Mail, postage prepaid to:

Darren K. Sharp
Armstrong Teasdale, LLP
2345 Grand Blvd. STE 2000
Kansas City, MO 64108

And

David S. Gingras
Gingras Law Office, PLLC
3941 E. Chandler Blvd., #106-243
Phoenix, AZ 85048
david@gingraslaw.com
**Attorneys for Defendants**

/s/ Matthew J. O'Connor
Matthew J. O'Connor