**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| S.C., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| DIRTY WORLD, LLC, a Delaware limited | ) |
| liability company, | )    Case No: 4:11-cv-392 |
| | ) |
| and | ) |
| | ) |
| NIK RICHIE, an individual, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**REPLY SUGGESTIONS IN SUPPORT OF DEFENDANTS'**
**RENEWED MOTION FOR SUMMARY JUDGMENT**

ARMSTRONG TEASDALE LLP

BY:*/s/ Darren K. Sharp*
    Darren K. Sharp     MO #50841
    2345 Grand Boulevard, Suite 1500
    Kansas City, Missouri 64108
    816.221.3420
    816.221.0786 (facsimile)
    dsharp@armstrongteasdale.com

AND

    GINGRAS LAW OFFICE, PLLC
    David S. Gingras (admitted *pro hac vice*)
    3941 E. Chandler Blvd., #106-243
    Phoenix, AZ 85048
    Tel.: (480) 668-3623
    Fax: (480) 248-3196
    DAVID@GINGRASLAW.COM

**ATTORNEY FOR DEFENDANTS**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

I. PREFATORY REMARKS ........................................................................................ 1

II. ARGUMENT ............................................................................................................ 2

    a. "Development" Means Making A *Material Contribution* To The *Unlawful Nature* Of The Content Giving Rise To The Case; Merely "Encouraging *Offensive* Content" Generally Does Not Affect CDA Immunity ........................................................................................................ 2

    b. Plaintiff's Reliance on *Jones v. Dirty World Entertainment* ........................... 10

    c. Plaintiff's Failure To Establish Any *Genuine* Factual Dispute ...................... 12

III. CONCLUSION ...................................................................................................... 16

# TABLE OF AUTHORITIES

**Cases**

*Almeida v. Amazon.com, Inc.*, 456 F.3d 1316 (11th Cir. 2006)........................................ 12

*Ascentive, LLC v. Opinion Corp.*, 2011 WL 6181452 (E.D.N.Y. 2011) ........................................ 5

*Barrett v. Rosenthal*, 40 Cal.4th 33, 53, 146 P.3d 510 (Cal. 2006) ............................................ 14

*Batzel v. Smith*, 333 F.3d 1018, 1031 (9th Cir. 2003)........................................................ 14

*Best Western Int'l, Inc. v. Furber*, 2008 WL 4182827 (D.Ariz. 2008)........................................ 9

*Dart v. Craigslist, Inc.*, 665 F.Supp.2d 961 (N.D.Ill. 2009) ............................................ 15

*Fair Housing Council v. Roommates.com, LLC*, --- F.3d ----, 2012 WL 310849

(9th Cir. Feb. 2, 2012)........................................................................ 4

*Fair Housing Council v. Roommates.com, LLC*, 489 F.3d 921 (9th Cir. 2007) ............................ 3

*Fair Housing Council v. Roommates.com, LLC*, 506 F.3d 716 (9th Cir. 2007) ............................ 3

*Fair Housing Council v. Roommates.com, LLC*, 521 F.3d 1157

(9th Cir. 2008)........................................................ 2, 3, 4, 5, 6, 7, 8, 10, 15

*FTC v. Accusearch, Inc.*, 570 F.3d 1187 (10th Cir. 2009)................................ 1, 2, 3, 5, 6, 8, 9, 11

*Gentry v. eBay, Inc.*, 99 Cal.App.4[th] 816, 833 n.11, 121 Cal.Rptr.2d 703, 717

n.11 (2002)........................................................................ 1

*Global Royalties, Ltd. v. Xcentric Ventures, LLC*, 544 F.Supp.2d 929 (D.Ariz.

2008) ........................................................................ 5

*Green v. Am. Online*, 318 F.3d 465 (3rd Cir. 2003) ........................................ 13

*GW Equity, LLC v. Xcentric Ventures, LLC*, 2009 WL 62173 (N.D.Tex. 2009) ........................ 15

*Johnson v. Arden*, 614 F.3d 785 (8th Cir. 2010)........................................ 11, 12, 13

Case 4:11-cv-00392-DW   Document 55   Filed 02/23/12   Page 3 of 21

*Jones v. Dirty World Entertainment Recordings, LLC*, --- F.Supp. 2d ----, 2012

 WL 70426 (E.D.Ky. Jan. 10, 2012) ................................................................. 10, 11

*M.A. v. Village Voice Media Holdings, LLC*, 809 F.Supp.2d 1041, 2011 WL

 3607660 (E.D.Mo. 2011) ........................................................................... 1, 9, 10

*Nemet Chevrolet v. Consumeraffairs.com, Inc.*, 591 F.3d 250 (4th Cir. 2009) ............................. 6

*Shiamili v. The Real Estate Group of New York, Inc.*, 952 N.E.2d 1011, 17

 N.Y.3d 281, 2011 WL 2313818 (N.Y. June 14, 2011) ........................................ 7, 8, 9

*Whitney Information Network, Inc. v. Xcentric Ventures, LLC*, 2008 WL 450095

 (M.D.Fla. 2008) ........................................................................................... 15

*Zeran v. Am. Online, Inc.*, 129 F.3d 327 (4th Cir. 1997) ................................................ 14

**Statutes**

47 U.S.C. § 230(f)(3) .......................................................................................... 2

**Rules**

Fed. R. Civ. P. 56 .............................................................................................. 16

# I.      PREFATORY REMARKS.

On page 3 of her suggestions, Plaintiff begins by claiming: "The issues in this case can essentially be boiled down to one question:  'Are Defendants information content providers?' If Defendants are found to be information content providers, then they are not immune under the CDA and may be held liable for the defamatory and tortious statements found in the Nasty Church Girl post …."

This argument is 100% wrong as a matter of law.  The question here is not whether Defendants NIK LAMAS-RICHIE ("Mr. Richie") or DIRTY WORLD, LLC ("DW"; collectively "Defendants") are "information content providers" *in general*.   Rather, the question is whether they are information content providers *of the <u>specific material</u> which Plaintiff claims is unlawful.  See Gentry v. eBay, Inc.*, 99 Cal.App.4th 816, 833 n.11, 121 Cal.Rptr.2d 703, 717 n.11 (2002) ("[T]he fact appellants allege eBay is an information content provider <u>is irrelevant if eBay did not itself create or develop the content for which appellants seek to hold it liable</u>.  It is not inconsistent for eBay to be an interactive service provider and also an information content provider; the categories are not mutually exclusive.  <u>The critical issue is whether eBay acted as an information content provider</u> *<u>with respect to the information that appellants claim is false or misleading</u>*.") (emphasis added); *see also M.A. v. Village Voice Media Holdings, LLC*, 809 F.Supp.2d 1041, 2011 WL 3607660, *8 (E.D.Mo. 2011) (noting that a website operator can be an information content provider and still remain immune, and explaining the relevant question is "was [the website] responsible for the development of the specific content that was the source of the alleged liability?") (quoting *FTC v. Accusearch, Inc*., 570 F.3d 1187, 1197 (10th Cir. 2009)).

Here, Defendants did not *develop* any <u>tortious</u> material giving rise to this case.  As such, they are immune under the CDA even though they created *other* content on their site.

## II.    ARGUMENT.

The question before this court involves two parts.  First, as a matter of <u>law</u>, the court must determine the meaning and scope of the word "development" as used in 47 U.S.C. § 230(f)(3).  Second, as a matter of <u>fact</u>, the court must analyze if any evidence exists that Defendants "developed" any of the material which Plaintiff claims is unlawful.  If Defendants did not develop the specific unlawful material at issue here, then they are immune under the CDA.  Each of these points is explained below.

> **a.    "Development" Means Making A *Material Contribution* To The *Unlawful Nature* Of The Content Giving Rise To The Case; Merely "Encouraging *Offensive* Content" Generally Does Not Affect CDA Immunity.**

On page 6 of her suggestions and quoting a single sentence of dicta from the Tenth Circuit's decision in *FTC v. Accusearch, Inc*., 570 F.3d at 1199, Plaintiff presents her legal definition of the term "develop" as follows:

> The test, then, for whether a service provider has "developed" content is that "a service provider is 'responsible' for the development of offensive content only if it in some way *specifically encourages development of what is offensive about the content*."  (emphasis in original)

Applying this definition, Plaintiff suggests that a website is not protected by the CDA if it does *anything* whatsoever to "encourage *offensive* content".  This simple argument may sound plausible at first, but it is wrong as a matter of law.  First, Plaintiff's "encourage *offensive* content" test is actually *not* supported by the Tenth Circuit's decision in *Accusearch* (it is purely dicta from that case), and it is also contrary to the Ninth Circuit's *en banc* decision in *Fair Housing Council v. Roommates.com, LLC*, 521 F.3d 1157 (9th Cir. 2008) which was heavily relied upon by the court in *Accusearch*.  Further, such a vague and ambiguous definition

2

of the term "development" would render the CDA effectively meaningless by creating a massive loophole in the CDA that would completely eviscerate the purpose of the law.

Contrary to Plaintiff's position, both *Accusearch* and *Roommates* actually support a much clearer and simpler standard which is the one this court should apply here: *did the website operator <u>materially contribute</u> to the <u>illegal</u> nature of the content*? This is not a novel rule. It is, in fact, precisely the standard applied by the Tenth Circuit in *Accusearch*; "[A] website helps to develop unlawful content, and thus falls within the exception to section 230, <u>if it contributes materially to the alleged illegality of the conduct</u>." *Accusearch*, 570 F.3d at 1200 (emphasis added) (quoting *Roommates*, 521 F.3d at 1168). Plaintiff flatly misstates this basic rule.

To help the court understand the genesis of this issue and the error in Plaintiff's position, a short discussion of the history of the "encourage *offensive* content" dicta is necessary. A slightly different variant of this phrase was first used in the Ninth Circuit's 2008 *en banc*[1] decision in *Roommates*. The exact quote from that case was: "The message to website operators is clear: If you don't <u>encourage illegal content</u>, or design your website to require users to input illegal content, you will be immune." *Roommates*, 521 F.3d at 1175 (emphasis added).

As previously explained, the *Roommates* case involved a roommate-matching website that was sued for requiring its users to answer questions about their sex, race, religion, number of

---

[1] On pages 6–7 of her response, Plaintiff cites an example taken from the Ninth Circuit's earlier panel decision in *Roommates*, 489 F.3d 921 (9th Cir. 2007) in which the court described an imaginary website called www.harassthem.com, noting, "It is not clear to us that the operator of this hypothetical website would be protected by the [CDA]." Plaintiff suggests this site is "analogous" to www.thedirty.com. Whether or not the two sites are comparable, the quoted portion of the 3-judge panel decision was expressly withdrawn by the Ninth Circuit when it granted rehearing *en banc*. In that order, the Ninth Circuit ordered: "The three-judge panel opinion <u>shall not be cited as precedent by or to this court or any district court of the Ninth Circuit, except to the extent adopted by the en banc court</u>." 506 F.3d 716 (9th Cir. 2007) (emphasis added). Because the example of www.harassthem.com was *not* adopted by the *en banc* court, it has no precedential effect in the Ninth Circuit or elsewhere.

children, etc. before they could use the site. The plaintiff claimed that merely asking these questions violated the federal Fair Housing Act regardless of how (or if) a user answered them.

Based on an assumption that it was *always illegal* for anyone to ask these types of questions (which the website itself created and required all users to answer) in a housing-related transaction, the Ninth Circuit held that the website was not entitled to CDA immunity for these questions: "Roommate does not merely provide a framework that could be utilized for proper or improper purposes; rather, Roommate's work in developing the discriminatory questions, discriminatory answers and discriminatory search mechanism <u>is directly related to the alleged illegality of the site</u>." *Roommates*, 521 F.3d at 1172 (emphasis added). Because the court assumed that merely asking these questions was illegal *per se*, the Ninth Circuit concluded that Roommates was not immune to the extent it required every user to answer them: "Where it is very clear that the website directly participates in developing the alleged illegality–as it is clear here with respect to Roommate's questions, answers and the resulting profile pages–immunity will be lost." *Id*. at 1174.[2]

_____

[2] Earlier this month, this aspect of the *Roommates* decision was <u>*reversed*</u> by the same judge who authored the original *en banc* decision; Chief Judge Alex Kozinski. Specifically, following the 2008 *en banc* decision which held that the <u>www.roommates.com</u> website lost its CDA immunity based on its "direct participation" in unlawful conduct, the case was remanded for a determination of the merits of the plaintiff's Fair Housing Act claims. After remand, the district court entered summary judgment for the plaintiff and the website operator appealed again to the Ninth Circuit.

After reviewing the merits of the FHA claim, Judge Kozinski reversed himself and concluded that the website <u>did not violate the FHA</u> (or the California state-law equivalent, the "FEHA"); "<u>we hold that Roommate's prompting, sorting and publishing of information to facilitate roommate selection *is not forbidden by the FHA*</u> or FEHA. Accordingly, we vacate the district court's judgment and remand <u>for entry of judgment for defendant</u>." *Roommates*, --- F.3d ----, 2012 WL 310849 (9th Cir. Feb. 2, 2012) (emphasis added). Although this outcome does not necessarily void the legal analysis of the CDA in the 2008 *en banc* decision, it clearly demonstrates the danger in capriciously denying CDA immunity based on an erroneous

4

One year after the Ninth Circuit's *en banc* decision in *Roommates*, the Tenth Circuit adopted the same definition of the term "development" in *FTC v. Accusearch*. In discussing its view, the Tenth Circuit stated: "We therefore conclude that a service provider is 'responsible' for the development of offensive content <u>only if it in some way specifically encourages development of what is offensive about the content</u>." *Accusearch*, 570 F.3d at 1199 (emphasis added). Thus, rather than employing the same verbiage from *Roommates*—"encourage illegal content"—the Tenth Circuit slightly modified the phrase to substitute the word "offensive" for "illegal".

Grasping at that seemingly minor wording change, Plaintiff suggests this sentence from *Accusearch* should be interpreted literally so that, rather than denying CDA immunity only to websites which directly create illegal content (the rule espoused by the Ninth Circuit in *Roommates*), the exception should be expanded to deny immunity to any websites that arguably "encourage *offensive* content", even without any evidence showing the site directly encouraged *illegal* content. Plaintiff's position ignores the fact that numerous other courts have rejected exactly the same argument. *See Ascentive, LLC v. Opinion Corp.*, 2011 WL 6181452, *20 (E.D.N.Y. 2011) (rejecting argument that operator of website www.pissedconsumer.com lost CDA immunity despite allegation that "PissedConsumer *encourages consumers* to create negative postings on the PissedConsumer website", and agreeing, "there is simply 'no authority for the proposition that [encouraging the publication of defamatory content] makes the website operator responsible, in whole or in part, for the 'creation or development' of every post on the site ... .'") (emphasis and brackets in original) (quoting *Global Royalties, Ltd. v. Xcentric Ventures, LLC*, 544 F.Supp.2d 929, 933 (D.Ariz. 2008) (holding, "It is obvious that a website entitled Ripoff Report encourages the publication of defamatory content. However, there is no

*assumption* that the website has engaged in unlawful conduct.

authority for the proposition that this makes the website operator responsible, in whole or in part, for the 'creation or development' of every post on the site."); *Nemet Chevrolet v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 257 (4th Cir. 2009) (same).

The flaw in Plaintiff's position is that she takes the "offensive content" dicta far out of context and reads *Accusearch* much too literally while ignoring the actual facts and holding of that case. In *Accusearch*, although the Tenth Circuit used the term "offensive" in its discussion, when viewed in context it is clear the court intended "offensive" to be synonymous for *illegal* material, which gave rise to the FTC's enforcement action. Indeed, in the paragraph immediately following the "offensive content" discussion the court explained exactly what "offending content" it was referring to:

> In the case before us, the offending content was the disclosed confidential information itself. We need not construe the word responsible to extend beyond its core meaning in this context to conclude that Accusearch was responsible for the development of that content-for the conversion of the legally protected records from confidential material to publicly exposed information.

*Accsearch*, 570 F.3d at 1199 (emphasis added). After finding that the website operator was directly involved in the creation and marketing of this *illegal* material—confidential telephone records—the Tenth Circuit reiterated that it was applying the exact same "development" standard used by the Ninth Circuit: "[A] website helps to develop unlawful content, and thus falls within the exception to section 230, if it contributes materially to the alleged illegality of the conduct." *Id.* at 1200 (quoting *Roommates*, 521 F.3 at 1168) (emphasis added).

Nothing in either *Roommates* or *Accusearch* supports the drastically different rule Plaintiff asks this court to adopt—that a website will lose CDA immunity by simply encouraging "offensive" content (whatever that means), even if the offensive content it encourages is not *per se* unlawful. This is simply not the correct standard for "development" from *Roommates*:

> [W]e interpret the term "development" as referring not merely to augmenting the content generally, but to materially contributing to its alleged unlawfulness. In other words, a website helps to develop unlawful content, and thus falls within the exception to section 230, if it contributes materially to the alleged illegality of the conduct.

*Roommates*, 521 F.3d at 1167–68 (emphasis added).

Further explaining this crucial point, the Ninth Circuit offered a helpful example of the type of conduct that would constitute "materially contributing" to the unlawful nature of a third-party submission: "a website operator who edits in a manner that contributes to the alleged illegality—such as by removing the word "not" from a user's message reading '[Name] did *not* steal the artwork' in order to transform an innocent message into a libelous one—is directly involved in the alleged illegality and thus not immune." *Id*. at 1169 (emphasis added). This example plainly shows what the Ninth Circuit intended: that if a website operator makes a material contribution to the unlawful nature of third-party content—such as by adding defamatory words, removing words, or changing words so that the meaning of the original message is changed from innocuous to unlawful—then the site has become responsible for the "development" of the unlawful material and therefore is not immune. This common-sense concept is the correct standard for CDA immunity and is the rule the court should apply here.

The same standard was applied in an extremely helpful and analogous case which Plaintiff carefully avoids discussing to any meaningful extent—*Shiamili v. The Real Estate Group of New York, Inc.*, 952 N.E.2d 1011, 17 N.Y.3d 281, 2011 WL 2313818 (N.Y. June 14, 2011)—a case in which each and every argument that Plaintiff makes here was extensively analyzed, discussed, and rejected. In *Shiamili*, the defendant operated a website with an offensive name—www.shittyhabitats.com—which actively solicited negative complaints about the poor quality of rental properties in New York City. In fact, the website described itself as

follows: "Welcome to Shittyhabitats.com, an on-line open content collaborative directory about New York City created and compiled by individuals."[3]   The website was sued for allegedly publishing a defamatory posting about the plaintiff, and the site argued it was entitled to immunity under the CDA.

The highest state court in New York—the Court of Appeals—found that the site was entitled to immunity under the CDA even though the website had an offensive name and even though the defendant (the website operator) added its own extremely offensive anti-Semitic comment to the user-generated material in which the website operator referred to the plaintiff as "King of the Token Jews".  *Shiamili*, 952 N.E.2d at 1020, 17 N.Y.3d at 292 (explaining that the website's own contribution did not affect its CDA immunity because "This is not a defamatory statement, since no 'reasonable reader could have concluded that [it was] conveying facts about the plaintiff.'  The illustration was obviously satirical and, <u>although offensive, it cannot by itself support Shiamili's claim of defamation.  Nor, contrary to the dissent's view, does it 'develop' or 'contribute[ ] materially to the alleged illegality' of the third-party content within the meaning of the CDA.</u>") (emphasis added).  Perhaps most importantly of all, the New York Court of Appeals considered, and then directly rejected, the exact same "encourage offensive content" theory that Plaintiff makes here based on *Roommates* and *Accusearch*:

> We reject Shiamili's contention that defendants should be deemed
> content providers because they created and ran a Web site which
> <u>implicitly encouraged</u> users to post negative comments about the
> New York City real estate industry.  <u>Creating an open forum for
> third parties to post content—including negative commentary—is
> at the core of what section 230 protects.</u>

---

[3] Neither the name of the website nor the text from the site are mentioned in the published New York Court of Appeals decision in *Shiamili*.  However, the website's name and additional information is described in the defendant's appellate briefing from that case, available at 2009 WL 8072983.

8

*Shiamili*, 952 N.E.2d at 1018, 17 N.Y.3d at 291–92 (emphasis added) (citing *Accusearch Inc.*, 570 F.3d at 1195 (noting that online message boards are "(t)he prototypical service qualifying for (section 230) immunity".); *see also Best Western Int'l, Inc. v. Furber*, 2008 WL 4182827, *10 (D.Ariz. 2008) (noting "[plaintiff] claims that the homepage [of defendant's site] impliedly suggests that visitors should make statements defaming BWI. The Court does not agree. <u>But even if this were true, it is insufficient to strip [defendant] of CDA immunity</u>.")

In her response suggestions, Plaintiff's entire discussion of *Shiamili* is limited to a <u>single sentence</u> in which she weakly attempts to distinguish the facts of *Shiamili*, arguing that the case was distinguishable because "the moderators [of <u>www.shittyhabitats.com</u>] did not provide their own commentary to each and every comment made on the site, unlike thedirty.com." Pla. Resp. at 16. Of course, this point is entirely irrelevant because in *Shiamili* (like in this case) the website operator DID provide its own commentary adding to the third-party post which gave rise to the action. However, because the "Token Jew" comment did not *materially* contribute to the unlawful nature of the third-party post, the *Shiamili* court found the CDA still protected the site's operator. The same is true here.

Even more recently, the U.S. District Court for the Eastern District of Missouri in *M.A. v. Village Voice Media Holdings, LLC*, 809 F.Supp.2d 1041, 2011 WL 3607660 (E.D.Mo. 2011) also recognized the "offensive content" language from *Accusearch* and the corresponding concept from *Roommates*, but the court rejected the argument that the CDA's definition of "development" should be expanded beyond a website's material participation in illegal conduct: "It's true that the broadest sense of the term 'develop' could include the functions of an ordinary search engine—indeed, just about any function performed by a website. But to read the term so broadly would defeat the purposes of section 230 by swallowing up every bit of the immunity

9

that the section otherwise provides." *Village Voice*, 2011 WL 3607660, *9 (emphasis omitted)

(quoting *Roommates*, 521 F.3d at 1167). Again, the same is true here. If the CDA's definition

of "development" was expanded to include any action by a website host which arguably

"encouraged" a third party user to post *something* which might be offensive, even where the site

clearly did nothing to encourage manifestly *unlawful* content, the CDA would be rendered

effectively useless. This point was recognized by the *Roommates* court itself:

> The fact that Roommate encourages subscribers to provide
> *something* in response to the prompt is not enough to make it a
> "develop[er]" of the information under the common-sense
> interpretation of the term we adopt today. … Roommate does not
> tell subscribers what kind of information they should or must
> include as "Additional Comments," and certainly does not
> encourage or enhance any discriminatory content created by users.
> Its simple, generic prompt does not make it a developer of the
> information posted.

*Roommates*, 521 F. 3d at 1174 (emphasis in original) .

In sum, for a website to be deemed responsible for the "development" of allegedly

unlawful material, the plaintiff must show that the site itself made a <u>substantive change or</u>

<u>contribution</u> to the third party's content and that this change or contribution had a *material*

impact on <u>unlawful</u> nature of the original submission. Mere implicit "encouragement" of

"offensive" content is not sufficient. Here, there is no evidence to show that Defendants made

any *material* contribution to any unlawful content about Plaintiff. For that reason Defendants are

entitled to immunity under the CDA.

### b. Plaintiff's Reliance on *Jones v. Dirty World Entertainment*.

As a preface to her discussion of the specific facts of this case, Plaintiff urges this court to

follow a recent decision from the Eastern District of Kentucky in *Jones v. Dirty World*

*Entertainment Recordings, LLC*, --- F.Supp. 2d ----, 2012 WL 70426 (E.D.Ky. Jan. 10, 2012) in

which Mr. Richie and Dirty World, LLC were also defendants. As Plaintiff correctly notes, in

that case the district court disagreed with Defendants and accepted the same argument Plaintiff

presents here—that based on *Accusearch* and *Roommates*, CDA immunity may be denied solely

because the website www.thedirty.com "encourages *offensive* content" because, *inter alia*, "the

name of the site in and of itself encourages the posting only of 'dirt,' that is material which is

potentially defamatory or an invasion of the subject's privacy." *Jones*, 2012 WL 70426, *4.[4]  On

February 7, 2012 Defendants filed an interlocutory appeal to the Sixth Circuit and, as of the date

of this reply brief, their appeal remains pending.  However, if this court chooses to accept the

holding of the federal court in Kentucky in *Jones*, the analysis here becomes much simpler.

Of course, the Kentucky federal court's decision is non-binding in this district, and, in

fact, the Kentucky federal court's ruling is directly inconsistent with binding Eighth Circuit

precedent; *Johnson v. Arden*, 614 F.3d 785 (8th Cir. 2010).  This is so because the *Jones* court

expressly adopted the "narrowest" possible interpretation of the CDA.  *See Jones*, 2012 WL

70426, *5 n. 5 (citing Ali Grace Zieglowsky, *Immoral Immunity: Using a Totality of the

Circumstances Approach to Narrow the Scope of Section 230 of The Communications Decency

Act*, 61 Hastings L.J. 1307 (2010)).  Such a narrow reading of the CDA is not only

unprecedented, this "ultra-narrow" construction of the CDA has been previously rejected by the

Eighth Circuit which instead embraced the "broad" majority view of the CDA; "The majority of

federal circuits have interpreted the CDA to establish broad 'federal immunity to any cause of

---

[4] This aspect of the *Jones* court's decision is manifestly erroneous.  This is so because both in the *Jones* case and in this case, the undisputed evidence demonstrates that the website's user submission form is 100% content-neutral, allowing users to upload material about any topic whatsoever.  *See* Affidavit of Nik Lamas-Richie (Doc. #14–1; Exhibit I).  Furthermore, the undisputed evidence shows that the actual content appearing on www.thedirty.com does not consist "only of 'dirt,' that is material which is potentially defamatory or an invasion of the subject's privacy".  Rather, the undisputed facts show the site contains more than 75,000 posts on a wide variety of topics including news, sports, Presidential politics, the economy, and so forth.

action that would make service providers liable for information originating with a third-party user of the service.'"  *Johnson*, 614 F.3d at 791 (emphasis added) (quoting *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1321 (11th Cir. 2006)).

In sum, the Kentucky federal court's decision is not only manifestly incorrect as a matter of both fact and law, it directly conflict with the Eighth Circuit's "broad" interpretation of the CDA.  As such, this court should decline Plaintiff's invitation to reach the same erroneous result.

### c.    Plaintiff's Failure To Establish Any *Genuine* Factual Dispute.

Finally, it is important to note that Plaintiff cannot defeat summary judgment by refusing to clearly state her position, nor may she use vague evidentiary references to create a factual dispute where no dispute actually exists.

For instance, on page 1 of Plaintiff's Response Suggestions, she sets forth four specific material "facts" (which are primarily conclusions of law) which she claims are disputed; i.e., "Nik Richie has developed the content found on www.thedirty.com and has specifically encouraged what is offensive and illegal about the Nasty Church Girl post."  However, rather than citing any underline specific evidence in the record to support this conclusion, she instead cites to 14 separate portions of Mr. Richie's deposition transcript without ever discussing or explaining *how* this testimony supports her position.  The reason for this lack of specificity is apparent—upon closer review none of this testimony supports Plaintiff's position.

For example, to show that Mr. Richie "has developed … what is offensive and illegal about the Nasty Church Girl post", Plaintiff cites, among other things, page 56, line 10–15 of Mr. Richie's deposition which contains the following colloquy:

[By Plaintiff's Counsel]: Q:   And do you make an effort to make sure that your comments are true based on the content that is submitted?

[By Mr. Richie]:          A:   It's impossible for me. There's too much content to submit to -- are

you asking me if I fact check?  It's impossible.

This testimony does *not* establish a genuine factual dispute as to whether Mr. Richie "developed" the "Nasty Church Girl" post.  It simply shows that Mr. Richie does not fact-check user-generated comments before they are published.  This non-controversial point was previously acknowledged in ¶ 20 of Mr. Richie's summary judgment affidavit (Doc. #46-1 at 5; explaining "I cannot and do not 'fact-check' user submissions for accuracy").

As a matter of law, a website's failure to fact-check third party submissions is *per se* insufficient to deprive the site of CDA immunity.  *See Johnson*, 614 F.3d at 791 (noting, "under the CDA the defendant ISP is not liable for failing to monitor, screen, or delete allegedly defamatory content from its site.") (emphasis added) (citing *Green v. Am. Online*, 318 F.3d 465, 471 (3rd Cir. 2003)); *Roommates.com, Inc.*, 521 F.3d at 1171–72 (noting, "The claim against the website was, in effect, that it failed to review each user-created profile to ensure that it wasn't defamatory.  That is precisely the kind of activity for which Congress intended to grant absolution with the passage of section 230.") (emphasis added).

Similarly, Plaintiff also supports her "development" argument by citing page 40, lines 10–12 from Mr. Richie's deposition which contain the following testimony:

[By Plaintiff's Counsel]: Q:   You choose what goes on the site and what does not go on the site; correct?

[By Mr. Richie]:          A:   Yes.

Again, this testimony does not establish that Mr. Richie "developed" any part of the allegedly tortious post at issue in this case; it merely shows that Mr. Richie screens material submitted to the site by third party users and he selects which content to publish and which to reject (another point acknowledged by Mr. Richie in ¶ 20 of his summary judgment affidavit).  Rather than

helping Plaintiff's position, these facts mandate a finding of immunity because Congress created the CDA to <u>encourage</u> website operators like Mr. Richie to actively review and screen content without fear of incurring liability; "Both the terms of section 230(c)(1) and the comments of Representative Cox reflect the intent [of Congress] <u>to promote active screening by service providers of online content provided by others</u>."  *Barrett v. Rosenthal*, 40 Cal.4th 33, 53, 146 P.3d 510, 522 (Cal. 2006); *see also Roommates*, 521 F.3d at 1170–71 (holding, "any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230.");  *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997) ("[L]awsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—<u>such as deciding whether to publish, withdraw, postpone or alter content—are barred</u>.") (emphasis added); *Batzel v. Smith*, 333 F.3d 1018, 1031 (9th Cir. 2003) (agreeing, "the exclusion of 'publisher' liability necessarily precludes liability for exercising the usual prerogative of publishers to choose among proffered material and to edit the material published while retaining its basic form and message.")

As is true of the above examples, none of the other cited portions of Mr. Richie's deposition testimony establish that he "developed" any of the <u>specific material</u> which gives rise to this action.  Given that the Eighth Circuit has expressly adopted a "broad" interpretation of the CDA, it is clear that nothing in this testimony speaks to the single dispositive question—did Mr. Richie *materially contribute* to the illegal nature of the content?

This is true even though Mr. Richie created the "Would You?" category.  Asking a person to express his views about the attractiveness of another person is not *per se* unlawful, but even assuming it was, Mr. Richie did not choose to place the post about Plaintiff into that category; the original author who created the post did so.  These facts do not warrant holding Mr.

Richie responsible for every post submitted in the "Would You?" category. *See Dart v. Craigslist, Inc.*, 665 F.Supp.2d 961, 968 (N.D.Ill. 2009) (rejecting argument that website operator www.craigslist.com lost CDA immunity because "Craigslist causes or induces its users to post unlawful ads-by having an 'adult services' category with sub-sections like 'w4m'"; "We disagree with plaintiff that the 'adult services' section is a special case. The phrase 'adult,' even in conjunction with 'services,' is not unlawful in itself nor does it necessarily call for unlawful content."); *see also Whitney Information Network, Inc. v. Xcentric Ventures, LLC*, 2008 WL 450095, *10 (M.D.Fla. 2008) (rejecting argument that operator of website www.ripoffreport.com lost CDA immunity by creating derogatory categories for users to submit posts including "con artists", "corrupt companies", and "false TV advertisements"; "the mere fact that Xcentric provides categories from which a poster must make a selection in order to submit a report on the ROR website is not sufficient to treat Defendants as information content providers of the reports about WIN that contain the 'con artists', 'corrupt companies', and 'false TV advertisements' categories."); *GW Equity, LLC v. Xcentric Ventures, LLC*, 2009 WL 62173, *4 (N.D.Tex. 2009) (rejecting plaintiff's argument that *Roommates* required denial of CDA immunity where website operator created "potentially defamatory categories to choose from.")

As explained in Mr. Richie's affidavit, users who submit material to www.thedirty.com are presented with a wide variety of more than 40 different categories from which they are permitted to choose, which include: "I HAVE NO IDEA", "Business", "News", "Spring Break" and "Would You?" Richie Aff. (Doc. #14–1; ¶ 15). The fact that a <u>user</u> decided to submit a post about Plaintiff into the "Would You?" category, as opposed to a less racy category such as "News" or "Spring Break," does not mean that Mr. Richie is responsible for the author's decision. The actual user-supplied text of the post—which Mr. Richie did not create or alter in

any way—would be no more and no less defamatory (assuming it is false) regardless in what category the post appears. Furthermore, the post would be no more and no less defamatory regardless of Mr. Richie's comment about the size of the Plaintiff's gumline. Because Mr. Richie did not make any *material* contribution to the allegedly illegality of the post, he remains immune.

## III.    CONCLUSION.

For all of the foregoing reasons, Defendants are entitled to summary judgment pursuant to Fed. R. Civ. P. 56.

ARMSTRONG TEASDALE LLP

BY:*/s/ Darren K. Sharp*_____
Darren K. Sharp                MO #50841
2345 Grand Boulevard, Suite 1500
Kansas City, Missouri 64108
816.221.3420
816.221.0786 (facsimile)
dsharp@armstrongteasdale.com

AND

GINGRAS LAW OFFICE, PLLC
David S. Gingras (admitted *pro hac vice*)
3941 E. Chandler Blvd., #106-243
Phoenix, AZ 85048
Tel.: (480) 668-3623
Fax: (480) 248-3196
DAVID@GINGRASLAW.COM

**ATTORNEY FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served via the Court's ECF system and via Regular U.S. Mail this 23rd day of February 2012 to:


Matthew J. O'Connor, Esq.
Bradly H. Bergman, Esq.
Mid-America Trial Lawyers
523 Grand Blvd., Suite 1B
Kansas City, Missouri 64106
mjoc@workingforjustice.com
bhb@workingforjustice.com

**Attorneys for Plaintiff**


*s/ Darren K. Sharp*
Attorney for Defendants