IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| S.C., | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 11-CV-00392-DW ) |
| DIRTY WORLD, LLC and NIK RICHIE, | ) ) |
| Defendants. | ) ) |

## ORDER

Pending before the Court is the Defendant Dirty World, LLC ("Dirty World") and Nik Richie's ("Richie") (collectively, the "Defendants") Renewed Motion for Summary Judgment (the "Motion"). See Doc. 45. The Defendants filed suggestions in support of the Motion (Doc. 46), the Plaintiff filed suggestions in opposition (Doc. 52), and the Defendants filed a reply brief (Doc. 55). After reviewing the record and the parties' arguments, the Court finds that the Plaintiff's claims are barred by the Communications Decency Act (the "CDA"). Consequently, and as set forth below, the Motion is GRANTED.

**I.**

**A.**

Unless otherwise noted, the following facts are undisputed. Defendant Dirty World operates www.TheDirty.com (the "Website"), which was founded by Defendant Richie. Richie is also the Website's editor-in-chief. Visitors to the Website may submit posts on any topic, and the posts vary in type and subject matter. Some posts are about the news, sports, and politics. Other posts offer gossip and commentary about both public and private individuals.

The Website does not require that a post be about any particular topic or individual. Instead,

users are simply instructed to describe "what's happening. Remember to tell us Who, What, When, Where, Why." The submission process asks the user to enter a title for their submission, along with the applicable "City," "College," and "Category." The Category field has more than forty options, including "I HAVE NO IDEA," "Business," "News," "Spring Break," and "Would You?"

The "Would You?" category is more of an inquiry for Richie to state whether he would be romantically interested in the person submitted. Richie responds negatively to nearly all of these inquiries, allegedly "to express his view as to the absurdity and fallacy of today's perfection-seeking culture." Though Richie does not fact-check each submission, he generally reviews them so that he can eliminate posts that he deems to be "inappropriate" or "unduly offensive."

**B.**

On January 24, 2011, a third party submitted the following post under the title "Nasty Church Girl:"

> Nik, I was living in Miami Beach for 4 months for work, and this nasty bitch [referring to the Plaintiff] who was my 'friend' started fcking [sic] my boyfriend in my bed and bringing her nasty ass horse teeth around my son trying to play house. This slut claims to be a sweet little church girl. She even works for the church! Fugly slut! Is this girl worth having sex with??? I wouldn't think so! LEE'S SUMMIT SLUT!!

Amended Complaint ("Compl.") at ¶ 17 (hereinafter the "Church Girl Post"). The author of the post also submitted a photo of the Plaintiff. Richie published the post on the Website, and opined immediately below it that "Her gumlines [sic] as big as her teeth, that's amazing.-nik." Id. at ¶ 18; Doc. 46-1, p. 29.

2

Richie did not author, modify, or alter any portion of the Church Girl Post or its title.[1] Instead, he published the post as submitted to the Website.[2] Richie does not personally know and has not knowingly spoken to the author of the Church Girl Post. Richie also does not know the Plaintiff and had never heard of her prior to the Church Girl Post.

## C.

The Plaintiff filed this lawsuit on April 14, 2011. The remaining claims in her First Amended Complaint (Doc. 28) are for defamation through libel (Count I), public disclosure of private facts (Count II), false light invasion of privacy (Count III), and intentional infliction of emotional distress (Count IV). The Complaint alleges in part that the Church Girl Post, suggesting that Plaintiff "was unchaste, a 'slut,' and was 'fcking' [sic] the poster's boyfriend in her bed" is false and places the Plaintiff in a false light. Compl. at ¶¶ 40-41. The Plaintiff alleges that the post was especially harmful to her "as an active member and employee of the United Methodist denomination church." For each count, the Plaintiff requests $900,000 in compensatory damages, as well as punitive and other damages.

The pending Motion argues that the Defendants are entitled to CDA immunity because they did not create or develop the Church Girl Post. See 47 U.S.C. § 230(c)(1). The Plaintiff argues in part that the CDA does not apply because "the site's owner and operator . . . encourages the offensive

---

[1] The Plaintiff does not dispute that a third-party authored the Church Girl Post, but argues that Richie "collaborated" with the author and "encouraged" and "ratified" the post. See Plt.'s Statement of Facts, Doc. 52, p. 4, at ¶¶ 1-3. The evidentiary support offered by the Plaintiff does not support this proposition. For example, the Plaintiff cites a portion of Richie's deposition testimony where he states that he decides which posts to publish. Id. at ¶ 3. This does not establish that Richie "created" or "ratified" the post under the CDA. As explained below, CDA immunity applies to the "exercise of a publisher's traditional editorial functions–such as deciding **whether to publish** . . . ." Zeran v. American Online, Inc., 129 F.3d 327, 330 (4th Cir. 1997) (emphasis supplied).

[2] Richie did, however, add an introduction which read "The Dirty Army" to show that the post was submitted by a third-party user. "The Dirty Army" is apparently a phrase that refers to fans of the Website. Richie's introduction does not alter the CDA analysis below.

3

and defamatory material . . . ."  The parties' arguments are addressed below.

## II.

The summary judgment standard is well-settled.  Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Wilkie v. Department of Health & Human Servs., 638 F.3d 944, 949 (8th Cir. 2011) (citations and quotations omitted).  If the moving party meets its initial burden, the nonmoving party cannot rest on the allegations in its pleadings.  Conseco Life Ins. Co. v. Williams, 620 F.3d 902, 910 (8th Cir. 2010).  Instead, the nonmoving party must "come forward with specific facts showing that there is a genuine issue for trial."  Id.  "A genuine issue of material fact exists if a reasonable jury could return a verdict for the party opposing the motion."  Humphries v. Pulaski Cnty. Special Sch. Dist., 580 F.3d 688, 692 (8th Cir. 2009).

## III.

Under the CDA, "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  47 U.S.C. § 230(c)(1).  This section "immunizes website operators from liability for content provided 'by another information content provider.'"  Global Royalties, Ltd. v. Xcentric Ventures, LLC, 544 F. Supp. 2d 929, 932 (D. Ariz. 2008).  Consequently, websites are treated differently than "newspapers, magazines or television and radio stations, all of which may be held liable for publishing obscene or defamatory material written or prepared by others."  M.A. v. Village Voice Media Holdings, LLC, 809 F. Supp. 2d 1041, 1047 (E.D. Mo. 2011) (citations and quotations omitted).

4

Courts in this circuit and elsewhere have described CDA immunity as "broad" and "robust." Johnson v. Arden, 614 F.3d 785, 791 (8th Cir. 2010) (citations and quotations omitted); PatentWizard, Inc. v. Kinko's, Inc., 163 F. Supp. 2d 1069, 1072 (D.S.D. 2001). As explained by one court, "**Congress granted most Internet services immunity** from liability for publishing false or defamatory material **so long as the information was provided by another party**." Global Royalties, Ltd., 544 F. Supp. 2d at 933 (citations and quotations omitted) (emphasis supplied). That said, a website will lose immunity if it is also "an information content provider," which is defined as "any person or entity that is **responsible, in whole or in part, for the creation or development** of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3) (emphasis supplied).

## IV.

In this case, it is undisputed that a third party authored and then submitted the Church Girl Post. The Defendants did not alter the post, and published it as submitted to the Website. Consequently, CDA immunity turns on whether the Defendants are "**responsible, in whole or in part, for the** creation or **development of**" the Church Girl Post. See 47 U.S.C. § 230(f)(3). The Plaintiff argues in part that Defendants are responsible because they "encourage development of what is offensive about the content through the tenor of the [W]ebsite and Richie's own actions in commenting on posts and interaction with his readers." Doc. 52, p. 9.

### A.

The Court first examines the meaning of "development" under the CDA. Though that term continues to evolve under case law, the Tenth Circuit recently stated that "[a] website helps to develop unlawful content, and thus falls within the exception to section 230, if it contributes

5

materially to the alleged illegality of the conduct." F.T.C. v. Accusearch Inc., 570 F.3d 1187, 1200 (10th Cir. 2009) (quoting Fair Hous. Council v. Roommates.Com, LLC, 521 F.3d 1157, 1168 (9th Cir. 2008)). The Court finds that this meaning is in accordance with the existing case law, and adopts it for purposes of this Order.[3] Therefore, for example, a website may help develop unlawful content if it <u>requires</u> or <u>pays for</u> the submission of illegal information. See Accusearch, 570 F.3d at 1200; Roommates.Com, 521 F.3d at 1172. A website may also materially contribute to the illegality of a post "such as by removing the word 'not' from a user's message reading '[Name] did **not** steal the artwork' in order to transform an innocent message into a libelous one . . . ." Roommates, 521 F.3d at 1169 (emphasis in original).

## B.

Applying this meaning, the Court finds that the Defendants did not materially contribute to the development of the Church Girl Post. Most importantly, it is undisputed that the Church Girl Post was unilaterally drafted and submitted by a third-party. The Defendants have further established that (a) they did nothing to induce a post specifically directed at the Plaintiff; (b) Richie does not personally know and has never knowingly spoken to the author of the Church Girl Post; (c) Richie had never heard of the Plaintiff prior to commencement of this action; and (d) the Defendants did not add to or otherwise alter the substance of the post. In addition, the Website does not require the posting of actionable material, and it does not pay for such information. Shiamili v. Real Estate Grp. of New York, Inc., 952 N.E.2d 1011, 1018 (N.Y. 2011) ("[T]here is no allegation that the

---

[3] The Plaintiff argues for an expansive definition of "development," which would eliminate CDA immunity if a website "encourages" the development of "offensive" content. As explained below, mere encouragement is not sufficient to strip CDA immunity. Moreover, a standard that focuses on "offensive" as opposed to "illegal" content is impermissibly vague and would lead to inconsistent results.

6

defamatory comments were posted in response to any specific invitation for users to bash [plaintiff]."). To the contrary, users of the Website may submit posts on any topic.

In sum, a third party unilaterally created and submitted the Church Girl Post without specific instructions or requests from the Defendants to do so. This is precisely the type of situation that warrants CDA immunity. Doe v. MySpace, Inc., 528 F.3d 413, 419 (5th Cir. 2008) ("[S]o long as a third party willingly provides the essential published content, the interactive service provider receives full immunity regardless of the specific editing or selection process.") (citations and quotations omitted); GW Equity LLC v. Xcentric Ventures, LLC, 2009 WL 62173, at * 19 (N.D. Tex. Jan. 9, 2009) (recommending that claims be dismissed in part because "the material was unequivocally provided by another party"); Shiamili, 952 N.E.2d at 1020 (finding claims barred because the plaintiff alleged "that defamatory statements were posted on defendants' Web site, and some of them were re-posted by the defendants").

## C.

In light of the foregoing, the Plaintiff focuses more on the general structure and operation of the Website. She claims that because the Website does not publish all submissions, the Defendants develop the content by "hand select[ing] those juicy tidbits of trash that are titillating to the public . . . ." Doc. 52, p. 8. Case law, however, does not support this argument. The CDA protects the "exercise of a publisher's traditional editorial functions–such as deciding **whether to publish**." Zeran, 129 F.3d at 330 (emphasis supplied).

The Plaintiff also argues that Richie generally helps develop content "by his interaction with 'the Dirty Army' and in the creation and execution of categories like 'Would You?' where users submit content specifically to get Richie's views and expect an answer from him." Doc. 52, p. 18.

7

This argument fails because the CDA focuses on the specific post at issue. As explained by one court, "[t]he issue in the instant case is whether Defendants are responsible, in whole or in part, for the creation or development **of the particular postings** relating to [Plaintiff] that are the subject of this lawsuit." Whitney Info. Network, Inc. v. Xcentric Ventures, LLC, 2008 WL 450095, at * 12 (M.D. Fla. Feb. 15, 2008) (emphasis supplied); Village Voice Media Holdings, 809 F. Supp. 2d at 1051-1052 (focusing on the "specific content" at issue).

Finally, the Plaintiff argues that the Website encourages and "exists solely for people to post 'dirt' about their neighbors without regard for truth." Doc. 52, p. 9. This argument fails both legally and factually. As a matter of law, and even if true, merely encouraging defamatory posts is not sufficient to defeat CDA immunity. See Best Western Int'l, Inc. v. Furber, 2008 WL 4182827, at * 10 (D. Ariz. Sept. 5, 2008) ("impliedly suggest[ing] that visitors should make statements defaming [plaintiff] . . . is insufficient"); Shiamili, 952 N.E.2d at 1018 (concluding that implicit encouragement does not make a website an information content provider). Factually, the Plaintiff has not presented any evidence that the Website is devoted to "dirt" about private citizens or is merely "a portal for defamatory material." Johnson, 614 F.3d at 792. To the contrary, the Defendant has shown that the Website contains posts on a number of topics, including sports, politics, and other world events. Defs.' Statement of Uncontroverted Facts, at ¶ 12; Doc. 46-1, p. 9, 12, 14, 16, 18, 22.

### D.

In her opposition, the Plaintiff argues that the Court should follow Jones v. Dirty World Entm't Recordings, LLC, 2012 WL 70426 (E.D. Ky. Jan. 10, 2012), which found that Richie and the Dirty World were not entitled to CDA immunity. Jones concluded that "by reason of the very name of the site, the manner in which it is managed, and the personal comments of defendant Richie,

8

the defendants have specifically encouraged development of what is offensive about the content of the site." Id. at * 5.

Jones is factually distinguishable. The plaintiff in that case was a high school teacher. Among other posts about the plaintiff, one third party posted that her "ex" had "tested positive for [two sexually transmitted diseases] . . . so im sure [plaintiff] also has both." The third party also posted that the plaintiff's ex "brags about doing [plaintiff] in the gym . . . football field . . . her class room at the school where she teaches . . . ." Id. at * 1. In response to this post, Richie stated "Why are all high school teachers freaks in the sack?" Richie made other comments about the plaintiff, including a comment to her that "[y]ou dug your own grave here . . . ." Id. at * 4. It was also undisputed that Richie refused to remove the posts despite the plaintiff's requests.

Here, the Plaintiff has not identified any posts by Richie that could be seen as ratifying the Church Girl Post or encouraging further development of it. For example, this case could have been different if, as in Jones, Richie had responded to the Church Girl Post with "Why are all church girls freaks in the sack?" Instead, Richie simply made an opinion about the Plaintiff's appearance that did not relate to the alleged defamatory statements.[4] Unlike Jones, Richie also removed the Church Girl Post. Again, this suggests that the Defendants neither adopted or encouraged further development of the post. Given these significant factual differences, Jones is not persuasive.

This Court also distances itself from certain legal implications set forth in Jones. In particular, Jones appears to adopt a relatively narrow interpretation of CDA immunity. Id. at * 3, 5. This is in conflict with the "broad" interpretation recognized in this circuit. See Johnson, 614 F.3d at 791. Additionally, Jones found that "**the name of the site in and of itself** encourages the

---

[4] Specifically, Richie's comment about the size of Plaintiff's gumline is a non-actionable statement of opinion regarding the Plaintiff's physical appearance. It had nothing to do with whether the Plaintiff is unchaste.

9

posting only of 'dirt,' that is material which is potentially defamatory . . . ." Jones, 2012 WL 70426, at * 4 (emphasis supplied). As explained above, however, the CDA focuses on the specific content at issue and not the name of a website. See Global Royalties, Ltd., 544 F. Supp. 2d at 933 (finding that although a website entitled "Ripoff Report" encourages defamatory content, this does not make the website operator liable for every post). As also explained above, the Website is not devoted entirely to "dirt."

For all these reasons, the Court concludes that the Plaintiff's claims are barred because the Defendants are entitled to CDA immunity. That said–and to avoid any confusion–the Court disagrees with the Defendants' apparent belief that they are immune for any and all postings on their Website. Instead, the Court simply holds that the Defendants are entitled to immunity under the facts of this case. This holding does not necessarily mean that the Plaintiff is without recourse. Zeran, 129 F.3d at 330 ("None of this means, of course, that the original culpable party who posts defamatory messages would escape accountability.").

## V.

Consequently, and for the foregoing reasons, it is hereby ORDERED that the Defendants' Renewed Motion for Summary Judgment (Doc. 45) is GRANTED. The Clerk of Court is directed to terminate any pending motions, and to then mark this case as closed.

IT IS SO ORDERED.

Date:  March 12, 2012              /s/ Dean Whipple
                                                             Dean Whipple
                                          United States District Judge